[No. A114442. First Dist., Div. One. Oct. 17, 2007.]

LISA MURPHY, Plaintiff and Respondent, v.
CHECK 'N GO OF CALIFORNIA, INC., Defendant and Appellant.

## COUNSEL

Squire, Sanders & Dempsey, Alexandra A. Bodnar, Casey J. T. McCoy and Mark C. Dosker for Defendant and Appellant.

Law Offices of Ellen Lake, Ellen Lake; Keller Grover, Eric A. Grover, Jade Butman and Elizabeth A. Acevedo for Plaintiff and Respondent.

## OPINION

**MARCHIANO, P. J.**—Defendant Check 'N Go of California, Inc., appeals from an order denying its motion to compel arbitration of a wage and hour case filed by plaintiff Lisa Murphy. The main issues are whether the class action waiver in the arbitration agreement is unconscionable, a question we review with the benefit of the recent decision in *Gentry v. Superior Court* (2007) 42 Cal.4th 443 [64 Cal.Rptr.3d 773, 165 P.3d 556] (*Gentry*), and whether that question should be resolved by the court, rather than an arbitrator appointed under the agreement. We conclude that the court was empowered to decide the unconscionability issue, agree with its ruling that the class action waiver is unconscionable, and affirm the order denying the motion to compel arbitration.

## I. BACKGROUND

Plaintiff worked for defendant, a payday lending company, for eight years ending in 2005; for the last seven of those eight years she held the position of "salaried retail manager." She sued defendant in February 2006, alleging that defendant misclassified its salaried retail managers as exempt employees under state labor laws. The suit asserts causes of action on behalf of the class of salaried retail managers for violation of Business and Professions Code section 17200 et seq., and failure to pay or provide overtime compensation,

accurate itemized wage statements, adequate meal and rest periods, and wages upon termination, during the four years prior to the filing of the complaint.

Plaintiff signed defendant's "Dispute Resolution Agreement" (the agreement) in June 2004. In her declaration in opposition to the motion to compel arbitration, plaintiff states that the agreement came to her office "as part of our regular mailings from the company. All employees had to sign the agreement and return the signature pages to the corporate offices." She states that no one explained the agreement to her, or told her that she had the option to revise or opt out of the agreement. "I understood," she says, "that I had to sign the[] agreement[] as part of my job working for the company."

The agreement covers all claims arising from or relating to plaintiff's employment, other than claims she would file with governmental agencies that enforce employment insurance or discrimination laws. Covered claims include "any assertion by you or us that this Agreement is substantively or procedurally unconscionable," and "any preexisting or present claim that you or we actually assert or could assert against each other." The agreement provides four exclusive means, which need not be used in any particular order, for resolution of disputes: an "open door policy"; an "employee relations committee"; mediation; and arbitration.

The arbitration option, described in section 3.5 et seq. of the agreement, is mandatory if elected by either party. "Consequently," explains section 3.5.1 in bold print, "if the claimant or the person or entity against whom a Covered Claim is asserted elects to arbitrate the claim, then neither you nor we may file or maintain a lawsuit in a court and neither you nor we may join or participate in a class action or a representative action, act as a private attorney general or a representative of others, or otherwise consolidate the Covered Claim with the claims of others." Section 3.5.2 provides for arbitration by the American Arbitration Association unless the employee elects to use a similar national arbitration firm, and states in bold print that "you and we agree that an arbitration firm may not arbitrate a Covered Claim as a class action or a representative action and may not otherwise consolidate the Covered Claim with the claims of others." Section 3.5.4 states that the agreement is governed by the Federal Arbitration Act. Section 3.5.5 provides for severance of any part of the agreement found to be unenforceable, and for enforcement of the other provisions that are not invalidated.

Certain aspects of the agreement are set forth on a cover page in bold print under the heading "Notice," including the broad coverage of employment-related disputes, the provision for mandatory arbitration, and the class action waiver. The first two sentences of the notice state: "Before signing this

Dispute Resolution Agreement, you should carefully review the entire agreement and, if you want, consult with an independent attorney. By signing this agreement and by commencing or continuing an at-will employment relationship, you and we agree to exclusively use this dispute resolution program to resolve all employment-related disputes covered by the program."

In support of the motion to compel arbitration, defendant submitted the declaration of a corporate officer stating that defendant is an Ohio corporation licensed to do business in California, and attaching a copy of defendant's 2004 Dispute Resolution Agreement with the signature page plaintiff executed.

Plaintiff opposed the motion on unconscionability grounds. In addition to her declaration, plaintiff lodged declarations of her counsel and two other attorneys experienced in wage and hour cases attesting to the difficulty of prosecuting such cases individually, rather than as class actions. The attorneys stated that, given the relatively small sums of money involved in individual cases, it is difficult for plaintiffs to find counsel willing to take them, despite the availability of statutory attorneys' fees. The attorneys further opined that class actions were the only effective way to redress wage and hour violations. They each stated: "The blunt reality is that employers want to limit class actions because they do not want to reform business practices that reduce profits—regardless of the legality of the practices. . . . [I]f the employer can limit attacks on its global classification decision to the odd lawsuit or arbitration here and there, it will have no incentive to truly examine whether its practices comply with the law and make changes if they do not. As a matter of simple economics, a few individual settlements or even lost trials or arbitrations will be more than made up exponentially by the savings from the decision to (mis)classify employees as exempt and pay them a fixed salary for 45, 50, 55 and or more hours per week. The employees who have no idea their rights are being violated or who can't find attorneys to take on their relatively small individual cases will continue to be exploited by working unpaid overtime hours . . . ."

In its order denying the motion to compel arbitration, the court determined that (1) it had the power to rule on the unconscionability issues; (2) the parties' agreement, defined in the order as the "2004 arbitration agreement," was a contract of adhesion; (3) the agreement's class action waiver was substantively unconscionable under *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148 [30 Cal.Rptr.3d 76, 113 P.3d 1100] (*Discover Bank*); (4) the agreement's provisions for arbitration of unconscionability issues and preexisting claims were also substantively unconscionable; and (5) the unconscionable terms would not be severed from the agreement. All of these determinations are challenged in this appeal.

## II. DISCUSSION

### A. *Scope of Review*

Unconscionability findings are reviewed de novo if they are based on declarations that raise "no meaningful factual disputes." (*Higgins v. Superior Court* (2006) 140 Cal.App.4th 1238, 1250 [45 Cal.Rptr.3d 293] (*Higgins*).) However, where an unconscionability determination "is based upon the trial court's resolution of conflicts in the evidence, or on the factual inferences which may be drawn therefrom, we consider the evidence in the light most favorable to the court's determination and review those aspects of the determination for substantial evidence." (*Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 89 [7 Cal.Rptr.3d 267] (*Gutierrez*).) The ruling on severance is reviewed for abuse of discretion. (See Civ. Code, § 1670.5, subd. (a); *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 122 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*).)

### B. *Court's Jurisdiction*

■ Defendant maintains that an arbitrator appointed under the parties' agreement, rather than the court, should have decided the unconscionability issues that plaintiff raises. "[T]he question of arbitrability is for judicial determination '[u]nless the parties clearly and unmistakably provide otherwise.' " (*Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 552 [21 Cal.Rptr.3d 322] (*Dream Theater*).) To accept less than clear and unmistakable evidence of an agreement to arbitrate arbitrability "might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." (*First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 945 [131 L.Ed.2d 985, 115 S.Ct. 1920] (*First Options*).) Defendant notes that arbitrable claims under the agreement include "any assertion by you or us that this Agreement is substantively or procedurally unconscionable," and submits that this provision reflects a clear and unmistakable agreement to arbitrate unconscionability issues.

■ While the language of the agreement could not be clearer, plaintiff's alleged assent to this provision was vitiated by the fact that it was set forth in a contract of adhesion, i.e., a standardized contract drafted by the stronger party and presented to the weaker party on a take-it-or-leave-it basis (*24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1213 [78 Cal.Rptr.2d 533]). It is undisputed that plaintiff received the agreement through interoffice mail, the terms were never explained to her, and she was never told that the agreement was optional or negotiable. We can infer from this evidence that plaintiff reasonably expected that she was required to sign the contract as a condition of continued employment. Defendant submitted no

evidence to the contrary, and the provision in the agreement permitting the employee to "consult with an independent attorney," without more, certainly did not compel a contrary finding. (See *Gentry, supra,* 42 Cal.4th at p. 471 [agreement procedurally unconscionable despite advice to employees that they could consult with an attorney about their legal rights].) Substantial evidence supported the trial court's determination that the agreement was a contract of adhesion, and thus procedurally unconscionable (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071 [130 Cal.Rptr.2d 892, 63 P.3d 979] (*Little*) ["[t]he procedural element of an unconscionable contract generally takes the form of a contract of adhesion"]).

■ "Generally speaking, there are two judicially imposed limitations on the enforcement of adhesion contracts or provisions thereof. The first is that such a contract or provision which does not fall within the reasonable expectations of the weaker or 'adhering' party will not be enforced against him. [Citations.] The second—a principle of equity applicable to all contracts generally—is that a contract or provision, even if consistent with the reasonable expectations of the parties, will be denied enforcement if, considered in its context, it is unduly oppressive or 'unconscionable.' " (*Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 820 [171 Cal.Rptr. 604, 623 P.2d 165], fn. omitted; see also *Armendariz, supra,* 24 Cal.4th at p. 114 [enforcement denied only if provision is procedurally and substantively unconscionable].)

Both limitations on enforceability are present here. As *First Options, supra,* 514 U.S. at page 945, observed, parties would not ordinarily expect that an arbitrator, rather than a court, would determine his or her own jurisdiction. The provision for arbitrator determinations of unconscionability is also itself substantively unconscionable. "Substantively unconscionable terms may take various forms, but may generally be described as unfairly one-sided." (*Little, supra,* 29 Cal.4th at p. 1071.) " 'In assessing substantive unconscionability, the paramount consideration is mutuality.' " (*Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267, 1287 [16 Cal.Rptr.3d 296].) The agreement is facially mutual insofar as it covers assertions of unconscionability by "you or us" but, as plaintiff points out, the provision is entirely one sided because defendant cannot be expected to claim that it drafted an unconscionable agreement.

We therefore agree with the court below that, in this contract of adhesion, the provision for arbitrator determinations of unconscionability is unenforceable. Under the circumstances of this case, the judge is the proper gatekeeper to determine unconscionability.

Defendant cites *Dream Theater, supra,* 124 Cal.App.4th 547, and *Anderson v. Pitney Bowes, Inc.* (N.D.Cal., May 4, 2005, No. C 04-4808 SBA)

2005 U.S.Dist. Lexis 37662 (*Anderson*) as authority for a contrary conclusion. *Dream Theater* does not assist defendant because the agreement there—for the sale of a multimedia and entertainment business—was not a contract of adhesion. The agreement in *Anderson* was an adhesive employment contract that gave the arbitrator " '. . . exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including but not limited to any claim that all or any part of this Agreement is void or voidable.' " (*Anderson, supra*, 2005 U.S.Dist. Lexis 37662 at p. *3.) The court found that, through this provision, the parties had "unambiguously expressed their intent to submit the question of unconscionability to an arbitrator . . . ." (*Id.* at p. *10.) While that conclusion is at odds with the one we reach, *Anderson* is also distinguishable because the plaintiff there, unlike plaintiff here, did not argue that the provision giving the arbitrator the power to determine arbitrability was itself unconscionable. (*Id.* at p. *5, fn. 4; see *Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689] [opinions are not authority for propositions they do not consider].)

Defendant argues for the first time on appeal that an arbitrator must determine the unconscionability issues because those arguments are directed against the agreement as a whole, not just the arbitration provisions. "Under the [Federal Arbitration Act], a court may not consider a claim that an arbitration provision is unenforceable if it is a subterfuge for a challenge that the entire agreement (in which the arbitration clause is only a part) is unconscionable. That contention must be presented to the arbitrator." (*Higgins, supra*, 140 Cal.App.4th at p. 1249.)

Even if this argument were not waived by the failure to raise it below, we would conclude that it lacks merit. Plaintiff's claim of procedural unconscionability applies to the entire agreement, and not just the arbitration provisions, because the contract as a whole is one of adhesion. However, the claims of substantive unconscionability are all directed at the arbitration provisions. Plaintiff maintains that the agreement is substantively unconscionable insofar as it requires (1) arbitrator determinations of unconscionability, (2) arbitration of individual cases in lieu of class action suits, and (3) arbitration of preexisting disputes. Plaintiff has not objected to the agreement's "open door policy," "employee relations committee," and mediation provisions, and cannot be deemed to be challenging the agreement as a whole. Moreover, the court's rulings were limited, by the terms of its order, to the "2004 *arbitration* agreement." (Italics added.)

Accordingly, the trial court properly concluded that it had the power to determine the unconscionability issues plaintiff raises.

## C. *Class Action Waiver*

The trial court applied *Discover Bank, supra*, 36 Cal.4th 148, in concluding that the class action waiver in this case was unconscionable. *Discover Bank* was a class action suit by a credit card holder against the credit card issuer contesting the issuer's imposition of late fees and periodic finance charges. The cardholder agreement was a contract of adhesion that required arbitration of disputes at a party's election. At issue was the enforceability of a provision waiving the right to participate in a classwide arbitration. The court reasoned that:

"[A]lthough adhesive contracts are generally enforced [citation], class action waivers found in such contracts may also be substantively unconscionable inasmuch as they may operate effectively as exculpatory contract clauses that are contrary to public policy. As stated in Civil Code section 1668: 'All contracts *which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury* to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.' (Italics added.)

"Class action and arbitration waivers are not, in the abstract, exculpatory clauses. But because . . . damages in consumer cases are often small and because ' "[a] company which wrongfully exacts a dollar from each of millions of customers will reap a handsome profit" ' [citation], ' "the class action is often the only effective way to halt and redress such exploitation." ' [Citation.] Moreover, such class action or arbitration waivers are indisputably one-sided. 'Although styled as a mutual prohibition on representative or class actions, it is difficult to envision the circumstances under which the provision might negatively impact Discover [Bank], because credit card companies typically do not sue their customers in class action lawsuits.' [Citation.] Such one-sided, exculpatory contracts in a contract of adhesion, at least to the extent they operate to insulate a party from liability that otherwise would be imposed under California law, are generally unconscionable." (*Discover Bank, supra*, 36 Cal.4th at pp. 160–161.)

The court "[did] not hold that all class action waivers are necessarily unconscionable. But when the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then, at least to the extent the obligation at issue is governed by California law, the waiver becomes in practice the exemption of the party 'from responsibility for [its] own fraud, or willful injury to the person or

property of another.' (Civ. Code, § 1668.) Under these circumstances, such waivers are unconscionable under California law and should not be enforced." (*Discover Bank, supra,* 36 Cal.4th at pp. 162–163.)

■ The class action waiver in the case at bench is also "patently one-sided" (*Ingle v. Circuit City Stores, Inc.* (9th Cir. 2003) 328 F.3d 1165, 1175 [describing prohibition against classwide arbitration of employment disputes]), and *Discover Bank* applies when the class action waiver is "in practice the exemption" of defendant from responsibility because a class action would be " ' "the only effective way to halt and redress" ' " the alleged violations (*Discover Bank, supra,* 36 Cal.4th at pp. 163, 161). This issue was essentially a factual question, and plaintiff's declarations of counsel were the only evidence presented on that question. According to those declarations, class members would have difficulty securing legal representation for individual cases because of the relatively small sums involved, and class actions are necessary to deter employers like defendant from misclassifying their employees.[1] Those opinions constituted substantial evidence supporting the court's ruling that the class action waiver provisions of the agreement were "exculpatory clauses" under *Discover Bank,* and therefore substantively unconscionable. (*Gutierrez, supra,* 114 Cal.App.4th at p. 89.)

The trial court's determination and the foregoing analysis are bolstered by the decision in *Gentry, supra,* 42 Cal.4th 443. *Gentry* confirmed that *Discover Bank*'s reasoning was not confined to consumer actions involving miniscule damages, and extended *Discover Bank*'s rationale to wage and hour cases involving unwaivable statutory rights where a class action waiver could likewise be "exculpatory in practical terms because it can make it very difficult for those injured by unlawful conduct to pursue a legal remedy." (*Id.* at p. 457.) *Gentry* also confirmed that whether a class action waiver is exculpatory in the wage and hour context involves a "factual showing" (*id.* at p. 466) as to the "real world obstacles to the vindication of class members' rights to overtime pay through individual arbitration" (*id.* at p. 463), including "the modest size of the potential individual recovery, the potential for retaliation against members of the class, [and] the fact that absent members of the class may be ill informed about

---

[1] Defendant asks us to take judicial notice of six "non-class action wage and hour" complaints filed in San Francisco or Los Angeles Superior Court in 2006. These complaints are offered to prove that plaintiff's declarations of counsel "are irrelevant and should have no bearing on this matter because individual wage and hour claims, including complaints for claims similar to those in this action, are indeed regularly brought." "Reviewing courts generally do not take judicial notice of evidence not presented to the trial court." (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [58 Cal.Rptr.2d 899, 926 P.2d 1085].) Accordingly, defendant's request for judicial notice is denied. Plaintiff requests judicial notice of information on the process for bringing claims before the Labor Commissioner, which is offered to show that this process "does not provide the same protections for the employee and is not an adequate substitute for a court proceeding . . . ." Plaintiff's request for judicial notice is likewise denied. (*Ibid.*)

their rights" (*ibid.*)—considerations that were all addressed expressly or by reasonable implication in plaintiff's declarations of counsel. Defendant failed to controvert those declarations, and is not entitled as a matter of fairness or due process to a second opportunity to do so in the wake of *Gentry*.

## D. Severance

■ Defendant argues that the court erred by refusing to enforce the entire arbitration agreement, rather than severing the clauses it found to be unconscionable. Civil Code section 1670.5, subdivision (a) provides that "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." The court has discretion under this statute to refuse to enforce an entire agreement if the agreement is "permeated" by unconscionability. (*Armendariz, supra,* 24 Cal.4th at p. 122.) An employment arbitration agreement can be considered permeated by unconscionability if it "contains more than one unlawful provision . . . . Such multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." (*Id.* at p. 124.)

Here, as we have explained, at least two aspects of the arbitration agreement are unconscionable: (1) the provision for arbitrator determinations of unconscionability issues; and (2) the class action waiver. "[G]iven the multiple unlawful provisions, the trial court did not abuse its discretion in concluding that the arbitration agreement is permeated by an unlawful purpose" (*Armendariz, supra,* 24 Cal.4th at p. 124), and that the agreement as a whole should not be enforced.[2]

*Gentry* does not dictate a contrary result. While the court "believe[d] that severance is particularly appropriate in the case of class arbitration waivers" (*Gentry, supra,* 42 Cal.4th at p. 466), this statement referred to a situation where "an arbitration agreement contains a single term in violation of public policy" (*ibid.*). The opinion went on to note that severance would be an open issue in *Gentry* if it were determined that the agreement contained multiple unconscionable terms. (*Id.* at pp. 472–473; see *Little, supra,* 29 Cal.4th at pp. 1074–1076.)

---

[2] In view of these conclusions, we need not decide whether the provision for arbitration of preexisting claims was also unconscionable.

## III. CONCLUSION

The order denying the motion to compel arbitration is affirmed.

Stein, J., and Margulies, J., concurred.

On November 9, 2007, the opinion was modified to read as printed above.