Jonathan C. KALTWASSER, Plaintiff,

v.

CINGULAR WIRELESS LLC,
a Delaware Corporation,
Defendant.

No. C07–00411.
[Docket no. 26].

United States District Court,
N.D. California,
San Jose Division.

April 11, 2008.

Michael David Braun, Braun Law Group, P.C., Janet Lindner Spielberg, Law Offices of Janet Lindner Spielberg, Robert Ira Spiro, Spiro Moss Barness LLP, Los Angeles, CA, Joseph N. Kravec, Jr., Wyatt A. Lison, Specter Specter Evans & Manogue, P.C., Pittsburgh, PA, for Plaintiff.

David L. Balser, Nathan Lewis Garroway, McKenna Long & Aldridge, LLP, Atlanta, GA, Donald M. Falk, Mayer Brown LLP, Palo Alto, CA, Felicia Yi–Wen Feng, McKenna Long & Aldridge LLP, San Francisco, CA, for Defendant.

## ORDER DENYING MOTION TO COMPEL ARBITRATION

FOGEL, District Judge.

Plaintiff, Jonathan C. Kaltwasser ("Kaltwasser") brings this action against Cingular Wireless, LLC ("Cingular") for alleged violations of the California Business and Professions Code and the Consumer Legal Remedies Act ("CLRA") and for breach of contract. Cingular moves to compel arbitration pursuant to the Federal Arbitration Act ("FAA"). The Court has considered the moving and responding papers and the argument of counsel presented at

the hearing on January 25, 2008. For the reasons set forth below, the motion will be denied.

## I. BACKGROUND

Kaltwasser alleges the following. Cingular is a Delaware corporation with its principal place of business in Atlanta, Georgia and is the largest wireless communications company in the United States. In July 2006, Kaltwasser renewed his wireless telephone service with Cingular. Kaltwasser claims to have based his renewal on advertising that identified Cingular as the wireless service with the fewest dropped calls. Kaltwasser alleges that by providing service that does not meet this standard, Cingular has violated the California Business and Professions Code and the CLRA and also has breached its contract with him.

Kaltwasser's Wireless Service Agreement contains the following arbitration clause:

> Cingular and you ... agree to arbitrate all disputes and claims arising out of or relating to this Agreement for Equipment or services between Cingular and you.... You and Cingular agree that YOU AND CINGULAR MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, and not as a plaintiff or class member in any purported class or representative proceeding.

*See* Declaration of Neal S. Berinhout in Support of Motion of Defendant to Compel Arbitration and Dismiss Litigation Pursuant to the Federal Arbitration Act. ("Berinhout Decl."), Exs. 4, 7. The agreement also contains the following statement:

> Notwithstanding any provision in this Agreement to the contrary, we agree that if Cingular makes any change to this arbitration provision ... during your Service Commitment, you may reject any such change and require Cingular to adhere to the language in this provision if a dispute between us arises.

*Id.*, Ex. 8.

In December 2006, Cingular allegedly mailed Kaltwasser a copy of a modified arbitration clause that according to Cingular governs the current proceedings. That clause reads as follows:

> Cingular and you agree to arbitrate **all disputes and claims** between us. This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to: claims arising out of or relating to any aspect of the relationship between us ...; claims that arose before this or any prior Agreement (including, but not limited to, claims relating to advertising); claims that are currently the subject of purported class action litigation in which you are not a member of a certified class; and claims that may arise after the termination of this agreement.

*Id.* Kaltwasser alleges that he neither received nor accepted the modification.

## II. LEGAL STANDARD

■ The FAA, which applies to all written contracts involving interstate or foreign commerce, mandates that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA was enacted to overcome longstanding judicial reluctance to enforce agreements to arbitrate. *Bradley v. Harris Research, Inc.*, 275 F.3d 884, 888 (9th Cir.2001). "The Act creates 'a body of federal substantive law of arbitrability' enforceable in both state and federal courts and preempting any state laws or policies to the contrary." *Cohen v. Wedbush, Noble, Cooke, Inc.*, 841 F.2d 282, 285 (quoting *Moses H. Cone Mem' Hosp. v.*

*Mercury Const. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).

■ However, state law is not entirely displaced from FAA analysis. In interpreting 9 U.S.C. § 2, the Supreme Court has held that "state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Perry v. Thomas*, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987). As a result, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening Section 2" of the FAA. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996).

## III. DISCUSSION

■ Under the FAA, a binding arbitration provision must be (1) in writing; and (2) part of a contract that evidences a transaction involving commerce. 9 U.S.C. § 2. The arbitration agreement included in Kaltwasser's Wireless Service Agreement meets these requirements.[1] Accordingly, the FAA applies to contractual disputes arising between the parties unless the FAA is preempted by a generally applicable state contract defense. *Id.* To determine whether there is FAA preemption, this Court must decide which state's law applies and whether, under the law of the appropriate state, the arbitration provision in the Wireless Service Agreement is valid and enforceable.

### A. *Choice of Law*

■ The parties do not dispute that they are bound by the choice-of-law provision in the Wireless Service Agreement, which provides that: "[t]he law of the state

of your billing address shall govern this Agreement." Berinhout Decl., Ex. 7. Kaltwasser asserts that pursuant to this provision California law applies, because he had a California billing address when he entered into the contract and the 2006 version of the Wireless Service Agreement also listed a California billing address. Cingular contends that the Court should apply Virginia law because Plaintiff had a Virginia billing address at the time he filed the instant action.

■ "Federal Courts sitting in diversity must apply 'the forum state's choice of law rules to determine the controlling substantive law.'" *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir.2005) (quoting *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir.2002)). Accordingly, because Kaltwasser filed his complaint in California, California's choice-of-law rules apply. "In determining the enforceability of a contractual choice-of-law provision, California courts apply the principles set forth in § 187 of the Restatement, which reflects a strong policy favoring enforcement of such provisions." *Omstead v. Dell, Inc.*, 473 F.Supp.2d 1018, 1023 (N.D.Cal.2007) (citing *Nedlloyd Lines B.V. v. Superior Court of San Mateo County*, 3 Cal.4th 459, 464–65, 11 Cal.Rptr.2d 330, 834 P.2d 1148 (Cal.1992)). Section 187 provides:

The law of the state chosen by the parties to govern their contractual rights and duties will be applied, ..., unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice, or (b) the application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen

---

1. As to the first requirement, *see* Berinhout Decl. ¶ 16 & Exs. 4, 7. As to the second requirement, *see United States v. Clayton*, 108

F.3d 1114, 1117 (9th Cir.1997) (cellular phones represent instrumentalities of interstate commerce).

state in the determination of the particular issue. . . . Restatement Second of Conflict of Laws § 187(2) (1971). "Under California law, the party advocating a contractual choice of law clause bears the burden of showing that the claim falls within the scope of the choice of law provision." *Oestreicher v. Alienware Corp.*, 502 F.Supp.2d 1061, 1065 (N.D.Cal.2007) (citing *Wash. Mutual Bank, FA v. Superior Court*, 24 Cal.4th 906, 916, 103 Cal.Rptr.2d 320, 15 P.3d 1071 (Cal.2001)).

Cingular fails to meet its burden under either prong of the Restatement test. As to the first prong, it does not show that Virginia has a substantial relationship to the parties or their transactions. While Virginia is the state in which Kaltwasser currently receives his wireless service bills, it is not the state in which the contract was formed, nor is it the state under whose laws the dispute arises.

As to the second prong the application of Virginia law, which disfavors class action lawsuits, is in conflict with California public policy, and California has declared a strong interest in applying that policy to contracts formed within the state. The California Supreme Court has opined that "because . . . damages in consumer cases are often small and because '[a] company which wrongfully exacts a dollar from each of millions of customers will reap a handsome profit' 'the class action is often the only effective way to halt and redress such exploitation.'" *Discover Bank v. Superior Court of Los Angeles*, 36 Cal.4th 148, 161, 30 Cal.Rptr.3d 76, 113 P.3d 1100 (Cal.2005) (quoting *Linder v. Thrifty Oil Co.*, 23 Cal.4th 429, 446, 97 Cal.Rptr.2d 179, 2 P.3d 27 (Cal.2000)). That court expressed the view that "class action waivers . . . may

operate effectively as exculpatory contract clauses that are contrary to public policy." *Discover Bank*, 36 Cal.4th at 161, 30 Cal. Rptr.3d 76, 113 P.3d 1100. In the present case, precluding Kaltwasser from bringing a class action suit against Cingular may as a practical matter exculpate it from any alleged wrongdoing on its part. At least in the view of California courts, if Cingular has engaged in wrongful acts, the only effective way to halt its unlawful practices and redress the exploitation of all affected consumers may be through a class action suit.[2]

■■■■ Under Virginia law, only those contractual provisions that "shock the conscience," which "no man in his senses and not under a delusion would make" and that "no fair man would accept," are unconscionable. *Mgmt. Enter., Inc. v. Thorncroft Co.*, 243 Va. 469, 416 S.E.2d 229, 231 (1992). Class actions generally are not allowed under Virginia law. *Forrest v. Verizon Commc'ns, Inc.*, 805 A.2d 1007, 1011 (D.C.2002); *Almeter v. Va. Dep't of Taxation*, 2000 WL 1687589 at *1 n. 1 (Va.Cir.Ct.2000).[3] Because Virginia likely would not find a contractual provision precluding a class action to be unconscionable, the application of Virginia law would contravene directly California's strong public policy. "[A]n agreement designating [a foreign] law will not be given effect if it would violate a strong California public policy . . . [or] result in an evasion of . . . a statute of the forum protecting its citizens." *America Online, Inc. v. Superior Court*, 90 Cal.App.4th 1, 13, 108 Cal. Rptr.2d 699 (1st Dist.2001); *see also Nedlloyd Lines B. v. Superior Court*, 3 Cal.4th 459, 11 Cal.Rptr.2d 330, 834 P.2d 1148 (holding that a choice of law provision between commercial entities will not be

---

**2.** The Court expresses no opinion at the present time as to whether Kaltwasser's proposed class action meets the requirements of Fed. R. Civ. Pro. 23.

**3.** *See also* Anne P. Wheeler, et al., *Survey of State Class Action Law* 675 (2006) ("There is no class action under state law in Virginia").

enforced if it violates a fundamental public policy and California has materially greater interest than the chosen state). Accordingly, this Court will apply California law to the Wireless Services Agreement.[4]

### B. *Unconscionability*

■■■■ "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable save upon such grounds as exist for the revocation of any contract." Calif. Code of Civ. Proc. § 1281. "It is well-established that unconscionability is a generally applicable contract defense, which may render an arbitration provision unenforceable." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir.2006) (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686–87, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)). Deciding whether or not a contract is unconscionable ultimately is a question of law for the court. Cal. Civ. Code § 1670.5(a). A contract is unenforceable only if it is both procedurally and substantively unconscionable. *Ar-*

*mendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 114, 99 Cal. Rptr.2d 745, 6 P.3d 669 (Cal.2000). "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.*

■■■ "The procedural component is satisfied by the existence of unequal bargaining positions and hidden terms common in the context of adhesion contracts." *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165, 1172 (N.D.Cal.2002). A contract of adhesion is a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Armendariz*, 24 Cal.4th at 113, 99 Cal.Rptr.2d 745, 6 P.3d 669. In the instant case, Cingular, the party with superior bargaining power, drafted the Wireless Service Agreement and presented it to Kaltwasser in a take-it-or-leave-it format, with no opportunity for negotiation, while retaining the unilateral right to amend its terms.[5]

**4.** Kaltwasser also prevails on this issue under basic principles of contract interpretation. Where a contract contains ambiguous language which cannot "be ascertained by fair inference from the terms of an agreement," *Ellis v. McKinnon Broad. Co.*, 18 Cal.App.4th 1796, 1802, 23 Cal.Rptr.2d 80 (Cal.Ct.App. 4th Dist.1993) (internal quotation marks omitted), a court must make logical inferences from the language used to determine the parties intent and the meaning of the contractual terms. *See MacKinnon v. Truck Ins. Exch.*, 31 Cal.4th 635, 647–48, 3 Cal.Rptr.3d 228, 73 P.3d 1205 (Cal.2003); *Reserve Ins. Co. v. Pisciotta*, 30 Cal.3d 800, 807, 180 Cal.Rptr. 628, 640 P.2d 764 (Cal.1982); *Bender–Miller Co. v. Thomwood Farms, Inc.*, 211 Va. 585, 588, 179 S.E.2d 636 (Va.1971). Further, courts must "look to the reasonable expectation of the parties at the time of the contract." *Kashmiri v. Regents of the Univ. of Cal.*, 156 Cal.App.4th 809, 832, 67 Cal.Rptr.3d 635 (1st Dist.2007); *accord* Cal. Civ.Code § 1636. In this instance, the most logical inference, which also

is indicative of the parties' expectations at the time of contract formation, is that the choice-of-law clause refers to Kaltwasser's billing address at the time he entered into the contract and listed on the 2006 Wireless Service Agreement. To hold that the clause refers to Kaltwasser's billing address at the time the instant case was filed, as suggested by Cingular, is neither logical nor representative of the parties' expectations at the time of contract formation, since this would allow for the clause to be changeable at will by a customer simply by changing his or her address.

**5.** Although the Wireless Service Agreement provides that Kaltwasser has the right to accept any amendments or reject the amendments and hold Cingular to the terms of the original contract, the Amendment specifies no means of rejecting the modified terms, other than cancelling service. California courts have held that such an offer is procedurally unconscionable. *See Szetela v. Discover Bank*, 97 Cal.App.4th 1094, 1100, 118 Cal.Rptr.2d

■ "The substantive component is satisfied by overly harsh or one-sided results that 'shock the conscience.'" *Comb*, 218 F.Supp.2d at 1172 (citing *Blake v. Ecker*, 93 Cal.App.4th 728, 742, 113 Cal. Rptr.2d 422 (2nd Dist.2001)). California courts have recognized that arbitration clauses that are likely to be enforced by one party and not another in fact are one-sided. *See Discover Bank*, 36 Cal.4th at 161, 30 Cal.Rptr.3d 76, 113 P.3d 1100 ("Although styled as a mutual prohibition on representative or class actions, it is difficult to envision the circumstances under which the provision might negatively impact Discover [Bank] because credit card companies typically do not sue their customers in class action lawsuits.") (citing *Szetela*, 97 Cal.App.4th at 1101, 118 Cal. Rptr.2d 862). "Such one-sided exculpatory contracts in a contract of adhesion, at least to the extent they operate to insulate a party from liability that otherwise would be imposed under California law, are generally unconscionable." *Discover Bank*, 36 Cal.4th at 161, 30 Cal.Rptr.3d 76, 113 P.3d 1100. The reasoning behind this rule is that if the drafting party can limit challenges to its practices to small individual lawsuits or infrequent arbitration, it has no incentive to examine whether its practices comply with the law and to make changes if they do not. *Murphy v. Check 'N Go*, 156 Cal.App.4th 138, 143, 67 Cal.Rptr.3d 120 (1st Dist.2007). "As a matter of simple economics, a few individual settlements or even lost trials or arbitrations will be more than made up exponentially by the savings from the decision to (mis)classify employees as exempt.... The employees who have no idea their rights are being violated or who can't find attorneys to take on their relatively small individual cases will continue to be exploited by working unpaid overtime hours...." *Id.* It is difficult to imagine a circumstance under which Cingular would initiate an action against a class that included Kaltwasser. On the other hand it is easy to imagine a customer in Kaltwasser's position pursuing such a claim, as in fact Kaltwasser seeks to do here. The provision thus is substantively unconscionable.

## IV. ORDER

The Court concludes that California state law defenses apply and that the arbitration clause at issue is both procedurally and substantively unconscionable under California law. Accordingly, Cingular's motion to compel arbitration is DENIED.

IT IS SO ORDERED.

■

---

862 (4th Dist.2002) (finding procedural unconscionability where a bank provided customers with amendments to their cardholder agreements in the form of bill stuffers, which customers were deemed to have accepted if they did not close their account).

In the same vein, the Ninth Circuit recently has held that "a party can't unilaterally change the terms of a contract; it must obtain the other party's consent before doing so. This is because a revised contract is merely an offer and does not bind the parties until it is accepted." *Douglas v. U.S. Dist. Ct. for the Cent. Dist. of California*, 495 F.3d 1062, 1066 (9th Cir.2007) (citation omitted).