Filed 10/17/13  Vega v. Frandeli Group CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CHEREE VEGA, | |
| Plaintiff and Respondent, | G047847 |
| v. | (Super. Ct. No. 30-2012-00590568) |
| FRANDELI GROUP LLC, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, William M. Monroe, Judge.  Affirmed.

Payne & Fears and Daniel F. Fears for Defendant and Appellant.

Calderone Law Firm, Vincent Calderone and Megan Hayati for Plaintiff and Respondent.

\*          \*          \*

Plaintiff Cheree Vega filed a complaint in Orange County Superior Court alleging retaliation in violation of the Fair Employment and Housing Act (Gov. Code, § 12940 et seq.) (FEHA), wrongful termination in violation of public policy, and violation of Labor Code section 226, subdivision (f), after she was terminated from her employment at Frandeli Group, LLC (Frandeli). Frandeli moved to compel arbitration, arguing that Vega had signed a valid arbitration agreement (the agreement) at the time she was hired. The trial court found the agreement "permeated with unconscionability" and declined to enforce it. We agree with the trial court that the agreement was unconscionable, and therefore affirm.

I

FACTS

From early January to mid-February 2012, Vega worked for Frandeli as an independent human resources consultant. She was then hired as a full-time employee. According to Vega, on the first day of her employment, she was given paperwork to complete, including the agreement, and was told that she "had to sign the agreement as a condition of employment with Frandeli. [Human resources representative Nancy] Caron told me that if I did not sign the Arbitration Agreement, Frandeli could not hire me."

Vega signed the agreement, which is a five-page, stand-alone document. It was signed by Angy Chin, chief financial officer, on Frandeli's behalf. According to Chin, she met with Vega and "took whatever time was necessary to explain the contents of Ms. Vega's new hire packet." Chin does not contradict Vega's statement that she was told signing the agreement was required as a condition of employment; indeed, she admits signing the agreement was required. The record does not include a declaration by Caron.

The first paragraph of the agreement stated: "Except as otherwise mutually agreed in writing, the Parties hereby irrevocably agree to arbitrate in accordance with the terms of this Agreement to Arbitrate ('Agreement') any legal disputes, claims,

2

controversies, or disagreements among them . . . whatsoever relating to, arising from, or concerning Employee's employment with Employer, including . . . wrongful termination or discrimination claims . . . shall be referred to and resolved exclusively by binding arbitration as well as this Agreement itself. . . . [¶] Without limitation, this Agreement shall apply to any legal disputes, claims, controversies, or disagreements among the Parties relating to or arising from harassment or discrimination claims or matters, state law, and federal law (including, without limitation, the Americans with Disabilities Act and the Civil Rights Act of 1964)."

In March 2012, Vega was directed to hire a new human resources benefits representative. According to her verified complaint, Vega eventually settled on a candidate named Anthony Walker, who is African-American. She set up an appointment for Walker to meet with Chin, her supervisor. Chin eventually told Vega, who is also African-American, that Vega could not hire Walker, because Frandeli's CEO, Doug Pak, "did not want to have an African American HR department." Vega "was appalled and surprised by Chin's comment. She told Chin that Mr. Walker was the best candidate she had come across in her search. Chin repeated again that because Pak had stated he didn't want an African American HR [d]epartment, that Ms. Vega should continue her search to interview other candidates and find someone who was not African American."

Vega's complaint stated she felt uncomfortable about excluding African-Americans from a continued search for no reason other than their race and informed Chin that she did not wish to do so. Chin informed her that she was required to do so. Vega delegated the task to Caron.

Vega told Chin and Darci Mangus, Frandeli's chief operating officer, that she felt it was wrong to exclude Walker because of his race. She said that she still wanted to hire him because she felt he was the best candidate for the job. Ultimately, Vega was asked by Chin and Mangus to hire a Caucasian woman for the position. Vega opposed this decision because this candidate's qualifications were not as strong as

3

Walker's. She told Chin and Mangus that she disagreed with the decision to hire a less qualified candidate over a more qualified one because of race. She complained that making hiring decisions based on race "was not right."

Soon after, on June 5, Vega was terminated from her employment at Frandeli. She was told by Mangus that she was "not a 'good fit'" for the company. She was informed she was being terminated for not participating in a lunchtime "skill building meeting" with other employees. She was also told she was not being let go for work related performance issues. She was told that she could still provide contract work for Frandeli when needed.

Vega filed a complaint with the Department of Fair Employment and Housing on August 3, 2012, requesting an immediate right-to-sue notice. The request was granted. On August 13, Vega filed the instant action in superior court, stating causes of action for retaliation under FEHA, wrongful termination in violation of public policy, and a violation of Labor Code section 226, subdivision (f), which pertains to the refusal to allow an employee to copy certain employment records.

On September 24, Frandeli filed a motion to compel arbitration, arguing that Vega had signed a valid and enforceable agreement to arbitrate that applied to the instant dispute. Vega opposed, arguing the agreement was permeated by both procedural and substantive unconscionability and that severance of the offending clauses was not an adequate cure. Frandeli's reply disputed Vega's unconscionability arguments and also argued that any unconscionable provisions could be severed by the court.

The court heard the matter on November 27, 2012. The court found that an arbitration agreement existed, but concluded the agreement was both procedurally and substantively unconscionable. With respect to substantive unconscionability, the court focused on three provisions raised by Vega: a fee-shifting provision, a confidentiality requirement (or "gag order"), and limits on discovery.

4

The court found all three provisions unconscionable, and concluded: "Given the fee/cost shifting provision, the gag order, and the confused discovery rights, this arbitration agreement is permeated with unconscionability, and reflects a systemic effort to impose arbitration on a weaker party. Severance of the offensive provisions is not an adequate cure, and no grounds exist to 'reform' the contract by re-writing the fee shifting, discovery and gag order provisions. The interests of justice would not be furthered by severance or *ad hoc* reformation, and defendant offers no reason to engage in such drastic cure methods." Accordingly, the motion to compel arbitration was denied. Frandeli now appeals.

## II

## DISCUSSION

### A. *Standard of Review*

"We review de novo a trial court's determination of the validity of an agreement to arbitrate when the evidence presented to the trial court was undisputed. [Citations.] . . . 'Whether an arbitration provision is unconscionable is ultimately a question of law. [Citations.]' [Citation.]" (*Parada v. Superior Court* (2009) 176 Cal.App.4th 1554, 1567 (*Parada*).) Where factual disputes do exist, we review the court's determinations for substantial evidence. (*Murphy v. Check 'N Go of California, Inc.* (2007) 156 Cal.App.4th 138, 144.) The court's ruling on severance is reviewed for abuse of discretion. (*Ibid.*)

### B. *Existence of Arbitration Agreement*

California has a strong public policy in favor of arbitration as an expeditious and cost-effective way of resolving disputes. (*Moncharsh v. Heily & Blase*

5

(1992) 3 Cal.4th 1, 9.)  Code of Civil Procedure section 1281.2[1] requires a court to order arbitration "if it determines that an agreement to arbitrate . . . exists . . . ."  (§ 1281.2.)

In *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394 (*Rosenthal*), the California Supreme Court stated, "[W]hen a petition to compel arbitration is filed and accompanied by prima facie evidence of a written agreement to arbitrate the controversy, the court itself must determine whether the agreement exists . . . .  Because the existence of the agreement is a statutory prerequisite to granting the petition, the petitioner bears the burden of proving its existence by a preponderance of the evidence."  (*Id.* at p. 413.)  "'Prima facie evidence is that degree of evidence which suffices for proof of a particular fact until contradicted and overcome, as it may be, by other evidence, direct or indirect.'"  (*People v. Van Gorden* (1964) 226 Cal.App.2d 634, 636-637, quoting 18 Cal.Jur.2d, Evidence, § 13, p. 435.)

Here, the evidence of an agreement to arbitrate is undisputed.  The prima facie evidence is the agreement itself, which Vega admits to signing.  Thus, Frandeli has met its burden on this point.  Once the moving party has established the existence of the arbitration agreement, the burden shifts to the party opposing arbitration to establish, by a preponderance of the evidence, the factual basis for any defense to enforcement.  (*Rosenthal*, *supra*, 14 Cal.4th at p. 413; *Pinnacle Museum Tower Assn. v. Pinnacle Market Development* (*US*)*, LLC* (2012) 55 Cal.4th 223, 246.)


C. *Unconscionability*[2]

Vega argues that the agreement should not be enforced because it is unconscionable.  Civil Code section 1670.5, subdivision (a), codifies unconscionability as

---

[1] Subsequent statutory references are to the Code of Civil Procedure.
[2] Throughout its argument, Frandeli relies heavily on federal district court cases, both published and unpublished.  While such cases may be persuasive in certain instances, they are, of course, not in any way binding on this court.  To the extent they conflict with California authority, they are unhelpful.

6

a reason for refusing a contract's enforcement. It states: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." This provision applies to arbitration agreements. (*Armendariz v. Foundation Health Psychcare Services*, Inc. (2000) 24 Cal.4th 83, 114 (*Armendariz*), abrogated in part on another ground in *AT&T Mobility LLC. v. Concepcion* (2011) __ U.S. __ [131 S.Ct. 1740, 1746].)

Under *Armendariz,* compulsory arbitration of FEHA claims is not per se unconscionable so long as the arbitration agreement: "'(1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum.'" (*Armendariz*, *supra*, 24 Cal.4th at p. 102.)

Further, the agreement must not be unconscionable as a whole. "'[U]nconscionability has both a "procedural" and a "substantive" element,' the former focusing on '"oppression"' or '"surprise"' due to unequal bargaining power, the latter on '"overly harsh"' or '"one-sided"' results. [Citation.] 'The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.' [Citation.] But they need not be present in the same degree. . . . [T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz*, *supra*, 24 Cal.4th at p. 114.) We discuss each of these in turn.

### 1. *Procedural Unconscionability*

Procedural unconscionability addresses the manner in which agreement to the disputed term was sought or obtained, such as unequal bargaining power between the parties and hidden terms included in contracts of adhesion. (*24 Hour Fitness*, *Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1212-1213.) "The procedural element of an unconscionable contract generally takes the form of a contract of adhesion, '"which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it."' [Citation.]" (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071.)

It is not reasonably subject to dispute that the agreement was a contract of adhesion. Frandeli argues that Vega did not produce evidence that "she signed the Agreement under protest, was threatened in any way, asked for additional time to review the Agreement, or attempted to negotiate different terms or otherwise modify the Agreement." Vega was not offered the agreement with a statement that it was subject to negotiation; it was handed to her, along with other documents, to complete and sign. Any inference Frandeli implies we should draw that the agreement was negotiable is belied by Chen's declaration, which stated that employees are "required to sign" the agreement as a condition of employment. Neither Chen nor any other representative of Frandeli offered evidence that the agreement was presented on anything but a "take it or leave it" basis. The agreement was a contract of adhesion.

Our conclusion, however, that the arbitration provisions "are adhesion contracts 'heralds the beginning, not the end, of our inquiry into its enforceability.' [Citation.] A procedural unconscionability analysis also includes consideration of the factors of surprise and oppression. [Citation.]" (*Parada*, *supra*, 176 Cal.App.4th at p. 1571.) Frandeli argues that no surprise was present, because in Vega's previous role as a consultant, she was responsible for giving new hires a packet of documents that included the arbitration agreement. She was, therefore, familiar with both the existence of the

agreement and its contents.  We agree, but surprise is not the only relevant factor, and its absence alone does not defeat Vega's claim of unconscionability.  (*Armendariz*, *supra*, 24 Cal.4th at p. 114; *Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 87 (*Gutierrez*), ["The procedural element focuses on 'oppression' *or* 'surprise.'" (italics added)].)

"'The oppression component arises from an inequality of bargaining power of the parties to the contract and an absence of real negotiation or a meaningful choice on the part of the weaker party.' [Citation.]" (*Morris v. Redwood Empire Bancorp* (2005) 128 Cal.App.4th 1305, 1319.)  "[I]n the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." (*Armendariz*, *supra*, 24 Cal.4th at p. 115.)

Vega's declaration stated that she "had to sign the agreement as a condition of employment with Frandeli."  She was told "that if I did not sign the Arbitration Agreement, Frandeli could not hire me."  Chen's declaration states that the agreement "is one of the documents that all newly hired employees at Frandeli are required to sign as a condition of employment."  As the trial court put it:  "[I]n order for plaintiff to secure employment, she had no choice but to sign the agreement."  We conclude this is sufficient to establish oppression, and the oppressive nature of obtaining Vega's consent resulted in a significant degree of procedural unconscionability.

### 2. Substantive Unconscionability

While procedural unconscionability focuses on how the agreement was obtained and executed, "[s]ubstantive unconscionability focuses on whether the provision is overly harsh or one-sided and is shown if the disputed provision of the contract falls outside the 'reasonable expectations' of the nondrafting party or is 'unduly oppressive.'" (*Gutierrez v. Autowest, Inc.*, *supra*, 114 Cal.App.4th at p. 88.)  Substantively

9

unconscionable terms may take various forms, but may generally be described as unfairly one-sided. (*Little v. Auto Stiegler, Inc.*, *supra*, 29 Cal.4th at p. 1071.) "Where a party with superior bargaining power has imposed contractual terms on another, courts must carefully assess claims that one or more of these provisions are one-sided and unreasonable." (*Gutierrez*, *supra*, 114 Cal.App.4th at p. 88.) The trial court found three provisions in the agreement substantively unconscionable, and we address each in turn.

### a. Cost and fee provision

Section 6 of the agreement states: "Employer shall pay the arbitrator's expenses and fees, any meeting room charges, and any other such expenses that would not have been incurred if the case had been litigated in the judicial forum having jurisdiction over it. Unless otherwise ordered by the arbitrator, each Party shall pay its own attorney fees, witness fees, and other expenses incurred by the Party for his or her own benefit. [¶] The arbitrator may award the prevailing Party his, her, or its expenses and fees of arbitration, including reasonable attorney fees and witness fees, in such proportion as the arbitrator decides. In general, it is the intention of the Parties that the prevailing Party be awarded its attorneys fees and costs, and that the arbitrator determine the prevailing Party, or the lack thereof, for this purpose."

In *Armendariz,* the court held: "'[W]hen an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court. This rule will ensure that employees bringing FEHA claims will not be deterred by costs greater than the usual costs incurred during litigation, costs that are essentially imposed on an employee by the employer.' [Citations.]" (*Armendariz*, *supra*, 24 Cal.4th at p. 95.)

In FEHA cases, a prevailing plaintiff may ordinarily recover attorney fees unless special circumstances would render the award unjust, but a prevailing defendant

10

may recover them only if the plaintiff's action was frivolous, unreasonable, without foundation, or brought in bad faith. (Gov. Code, § 12965, subd. (b); see *Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 985; *Trivedi v. Curexo Technology Corp.* (2010) 189 Cal.App.4th 387, 394-395.)

Frandeli argues that the agreement does not permit the arbitrator to disregard "settled California law with respect to the standards it must meet to recover attorneys' fees." This is belied by the plain language of section 6: "In general, it is the intention of the Parties that the prevailing Party be awarded its attorneys fees and costs, and that the arbitrator determine the prevailing Party, or the lack thereof, for this purpose." Indeed, the arbitrator is not only permitted but directed to determine the prevailing party and award attorney fees and costs to that party. This entirely disregards the FEHA standards for awarding fees, and because of the different standards for awarding plaintiffs and defendants attorney fees in FEHA cases, this provision is also incredibly one-sided. This is not merely about, as Frandeli seems to think, the costs of the arbitration itself, but about the potential for a huge award of attorney fees that Vega would be highly unlikely to face in court. The court did not err by finding this provision unconscionable.

### b. Confidentiality provision

Section 7 of the agreement states: "The Parties agree that, except to the extent that disclosure may be required pursuant to subpoena, deposition notice, discovery requests, court order or process, or otherwise required by law or ordered by the arbitrator, the conduct of, and decision, results, and any award of the arbitration are and shall be confidential and shall be kept confidential and secret by the Parties to this Agreement, and their respective attorneys, agents, and employees, except that the Parties may disclose the contents of this Agreement to their respective attorneys, auditors, accountants, insurers, clergy, and immediate family. The Parties further agree that any

11

comment by the Parties, and their attorneys, agents, and employees regarding the result of any arbitration shall be limited to a statement that the Parties settled their differences and resolved all controversies between them. Neither Party shall make, directly or indirectly, an[y] public derogatory remarks regarding the other Party to the arbitration."

While facially neutral, the one-sidedness of this provision is fairly obvious. The trial court cited *Davis v. O'Melveny & Myers* (9th Cir. 2007) 485 F.3d 1066, 1078-1079. In *Davis*, the parties were not permitted to disclose to anyone not directly involved in the mediation or arbitration the content of pleadings and papers, nor were they permitted to disclose that a controversy between them existed and there was a resulting mediation or arbitration. The *Davis* court held the provision was impermissibly one-sided because it prevented potential plaintiffs from "accessing precedent while allowing O'Melveny to learn how to negotiate and litigate its contracts in the future," thereby "plac[ing] O'Melveny 'in a far superior legal posture'." (*Id.* at p. 1078.) Frandeli attempts to distinguish this provision by stating section 7 only requires the parties keep "the conduct of, and decision, results, and any award of the arbitration are and shall be confidential." It does not explain, however, any functional difference, nor do we see one.

Frandeli cites *Chin v. Advanced Fresh Concepts Franchise Corp.* (2011) 194 Cal.App.4th 704, which included a brief discussion of a confidentiality clause it found permissible, because it provided exceptions for disclosure required by law or with prior consent by the parties. (*Id.* at p. 713.) But this ignores the practical impact of the confidentiality provision mentioned by the trial court and not apparently raised in *Chin* — the restriction such a provision placed on Vega because she could not conduct investigation "by way of informal interviews." This presents not only an issue of one-sidedness, but a significant practical limitation on her ability to pursue her claims. Not only must any result be kept secret, but so must "the conduct of" the arbitration itself. Thus, Vega would be in violation if she attempted to informally contact or interview any potential witness outside the formal discovery process. Such a limit would not only

12

increase Vega's costs unnecessarily by requiring her to conduct depositions instead of informal interviews, it also defeats the purpose of using arbitration as a simpler, more time-effective forum for resolving disputes. We therefore agree with the trial court that the provision is unconscionable.

### c. Discovery provision

Section 4 of the agreement, entitled "Conduct of Arbitration," states, in relevant part: "The arbitrator shall have the power to (a) issue subpoenas for the attendance of witnesses and subpoenas duces tecum for the production of books, records, documents, and other evidence; (b) order depositions to be used as evidence; (c) subject to the limitations on discovery enumerated above, to enforce the rights, remedies, procedures, duties, liabilities, and obligations of discovery as if the arbitration were a civil action before a California superior court; (d) conduct a hearing on the arbitrable issues; and (e) administer oaths to Parties and witnesses."

The trial court stated that section 4 "appears to limit discovery to subpoenas and depositions which the arbitrator orders. There is no express right to conduct written discovery." Frandeli disagrees, pointing to this provision in section 3: "If the Parties are unable to resolve a dispute covered in Section 1 of this Agreement through negotiation or other informal means, they shall submit any such dispute . . . to binding arbitration, before one (1) arbitrator, in accordance with California Code of Civil Procedure §§1280 through 1294.2; provided, however, that the terms of this Agreement shall prevail when in conflict with the provisions of the Code of Civil Procedure . . . ." Thus, Frandeli argues, section 1283.05, which states that the parties are entitled to the same discovery as they would if the action were in superior court, applies to the agreement.

We disagree that this constitutes an "express authoriz[ation]" to written discovery; at best, it incorporates the statute by reference, and at worst, based on the express language that the agreement controls over the Code of Civil Procedure when

13

there is a conflict, it abrogates it.  Section 4 only mentions subpoenas for documents and witnesses, and depositions.  It then states "subject to the limitations on discovery enumerated above, [the arbitrator shall have the power] to enforce the rights, remedies, procedures, duties, liabilities, and obligations of discovery as if the arbitration were a civil action before a California superior court."  What "limitations" are contemplated if these limitations do not exclude forms of discovery not mentioned earlier in the same paragraph?

"The denial of adequate discovery in arbitration proceedings leads to the de facto frustration of the employee's statutory rights."  (*Armendariz*, *supra*, 24 Cal.4th at p. 104.)  "We agree that adequate discovery is indispensable for the vindication of FEHA claims."  (*Ibid.*)  While something less than the full discovery rights included in the Code of Civil Procedure is permissible, "[plaintiffs] 'are at least entitled to discovery sufficient to adequately arbitrate their statutory claim . . . .'"  Discovery rights are particularly important to plaintiffs, who have the burden of proof.  (*Martinez v. Master Protection Corp.* (2004) 118 Cal.App.4th 107, 118.)

Because of its ambiguity and poor drafting, the agreement could lead to an arbitrator's severe restrictions on Vega's right to discovery.  We therefore find the court did not err in concluding the provision was unconscionable.  Further, this provision compounds the one-sidedness evident in the fee-shifting and confidentiality provisions.

*D.  Severance*

Frandeli argues that even if the provisions discussed above are unconscionable, severance is the appropriate remedy because the agreement is not permeated with unconscionability.  It claims that because the provisions are "mutual and bilateral," they do not permeate the agreement with unconscionability.  But in *Armendariz*, *supra*, 24 Cal.4th at page 124, the California Supreme Court explained that "multiple defects indicate a systematic effort to impose arbitration . . . not simply as an

14

alternative to litigation, but as an inferior forum that works to the [stronger party]'s advantage." The Court further stated: "The overarching inquiry is whether "'the interests of justice . . . would be furthered'" by severance. [Citation.]" (*Ibid.*)

While the unconscionable provisions here might be, on their face, "mutual and bilateral," those provisions serve only the interests of the party with stronger bargaining power — Frandeli. Having such provisions in the agreement creates a "heads I win, tails you lose" benefit for Frandeli. If a potential claimant does not notice or complain, they get the benefit of the unconscionable provisions. If someone does object, however, they simply attempt to sever those provisions while keeping the benefit of the rest of the agreement. (See *Parada*, *supra*, 176 Cal.App.4th at p. 1584 ["'The [drafter] is saddled with the consequences of the provision *as drafted*.'"].)

Those benefits are considerable. The burden on Vega in creating potential liability for hundreds of thousands of dollars in attorney fees, a liability she would never face in court unless her case was deemed frivolous, is obvious. Keeping the allegations in a case closed to public view nearly always benefits the defendant in a civil case, as it surely would here, while not helping Vega at all. Limiting discovery also obviously benefits the party that does not bear the burden of proof, in this case, Frandeli.

Thus, while the terms are facially "mutual and bilateral," Frandeli drafted this agreement with full knowledge that the most likely roles in litigation were Frandeli as the defendant and an employee as plaintiff, and these terms were included only to benefit Frandeli. Thus, given the multiple unconscionable provisions and obvious intent to disadvantage the weaker party, we conclude the interests of justice would not be served by severing the unconscionable provisions. The trial court did not error by declining to do so.

15

## III

## DISPOSITION

The order is affirmed.  Vega is entitled to her costs on appeal.

MOORE, ACTING P. J.

WE CONCUR:

ARONSON, J.

IKOLA, J.