[No. B203961. Second Dist., Div. Three. Mar. 17, 2009.]

OCTAVIO SANCHEZ et al., Plaintiffs and Respondents, v.
WESTERN PIZZA ENTERPRISES, INC., Defendant and Appellant.

160

**COUNSEL**

Van Vleck Turner & Zaller, Brian F. Van Vleck and Anthony J. Zaller for Defendant and Appellant.

Law Offices of James T. Grant and James T. Grant for Plaintiffs and Respondents.

OPINION

**CROSKEY, J.**—Western Pizza Enterprises, Inc. (Western Pizza), appeals the denial of its motion to compel arbitration of a complaint filed by Octavio Sanchez. The trial court determined that a provision in the arbitration agreement prohibiting class arbitration was unenforceable, that other terms of the agreement were unconscionable, and that the agreement could not be enforced. Western Pizza contends (1) the enforceability of the arbitration agreement is a question for the arbitrator to decide; (2) the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) preempts California law to the extent that California law would prevent the enforcement of the agreement; (3) the class arbitration waiver does not impermissibly interfere with the employees' ability to vindicate their statutory rights, and therefore is enforceable; and (4) the terms of the arbitration agreement are neither procedurally nor substantively unconscionable. We reject these contentions, conclude that the denial of the motion to compel arbitration was proper, and affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Factual Background*

Sanchez works as a delivery driver at a Domino's Pizza restaurant owned by Western Pizza.[1] He drives his own car in making deliveries. His hourly wage has ranged from the legal minimum wage to approximately 50 cents above minimum wage. Western Pizza reimburses him at a fixed rate of 80 cents per delivery regardless of the number of miles driven or actual expenses incurred.

Sanchez and Western Pizza are parties to an undated arbitration agreement. The record does not indicate when the parties signed the agreement. The agreement states that the execution of the agreement "is not a mandatory condition of employment." It states that any dispute that the parties are unable to resolve informally will be submitted to binding arbitration before an arbitrator "selected from the then-current Employment Arbitration panel of the Dispute Eradication Services," and that the arbitrator must be approved by both parties. It states that the parties waive the right to a jury trial. It also states that the arbitration fees will be borne by Western Pizza and, "Except as otherwise required by law, each party shall bear its own attorney fees and costs."

The arbitration agreement states that the arbitrator "shall be responsible for resolving any disputes over the interpretation or application of this Arbitration

---

[1] According to Sanchez's uncontroverted declaration, Western Pizza owns approximately 20 similar restaurants in Southern California.

Agreement." It also states, "[e]xcept as expressly provided, the interpretation, scope and enforcement of this ADR Agreement and all procedural issues shall be governed by the procedural and substantive provisions of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the 'FAA'), the federal decisional law construing the FAA, and the Rules of the Arbitrator, provided the Arbitrator's rules do not conflict with the FAA."

The arbitration agreement also provides a procedure for small claims: "If either Party asserts that a dispute involves an amount in controversy that is too small to warrant resolution by standard arbitration procedures, the claim may be resolved by a summary small claims procedure (the 'Small Claims Procedure'). The Parties shall meet and confer to agree on whether the use of a Small Claims Procedure is appropriate in light of the nature and amount of the claim and, if so, what dispute resolution procedures are most appropriate. To the extent the Parties are unable to agree, the Arbitrator shall decide whether and to what extent a Small Claims Procedure shall apply. The Small Claims Procedure may involve relaxed rules of evidence, the use of broad principles of equity in place of strict application of law, telephonic hearings, and such other economic procedures as the Arbitrator deems appropriate under the circumstances of the dispute and consistent with due process. In no event, however, shall the Arbitrator utilize a Small Claims Procedure for a dispute involving a claim in excess of $50,000."

The arbitration agreement includes a waiver of class arbitration, stating: "the Arbitrator shall not consolidate or combine the resolution of any claim or dispute between the two Parties to this ADR Agreement with the resolution of any claim by any other party or parties, including but not limited to any employee of the Company. Nor shall the Arbitrator have the authority to certify a class under Federal Rule of Civil Procedure Rule 23, analogous state rules, or Arbitrator's rules pertaining to class arbitration, and the Arbitrator shall not decide claims on behalf of any other party or parties."

The arbitration agreement also provides for the appointment of a referee (Code Civ. Proc., § 638, subd. (a)) to decide any issue in the event that any part of the agreement is determined to be unenforceable or any issue is determined to be nonarbitrable. It states that the referee's fees will be paid by Western Pizza and that the referee will have no authority to certify a class or decide the merits of any third party claim.

### 2. *Trial Court Proceedings*

Sanchez filed a putative class action complaint against Western Pizza in August 2007. He alleges that Western Pizza does not record the number of miles driven by its delivery drivers but instead reimburses them at the rate of

80 cents per delivery. He alleges that the drivers not only are not adequately reimbursed for their expenses incurred in the performance of their job duties, but also as a result are paid less than the legal minimum wage. He alleges counts for (1) failure to reimburse job expenses (Lab. Code, § 2802); (2) failure to pay minimum wage (*id.*, § 1194); (3) failure to itemize wage statements (*id.*, § 226); (4) unfair business practices (Bus. & Prof. Code, § 17200 et seq.); and (5) conversion.

Western Pizza asked Sanchez, through their respective counsel, if he would submit the dispute to binding arbitration and provided a copy of the arbitration agreement. Sanchez's counsel responded that the class arbitration waiver was unenforceable, that the agreement impermissibly restricted the right to discovery, and that the agreement purported to require the use of an arbitrator whose Web site included a testimonial by a former colleague of defendant's counsel who stated that the arbitrator had persuaded a plaintiff to " 'settle for a very small sum.' " Sanchez's counsel stated that Sanchez would submit to arbitration only if the class arbitration waiver and the provisions for small claims and a referee were stricken from the agreement and the arbitration proceeded as a class arbitration before JAMS or AAA (American Arbitration Association).

Western Pizza moved to compel arbitration and stay the action (Code Civ. Proc., §§ 1281.2, 1281.4). It argued that both the FAA and the California Arbitration Act (Code Civ. Proc., § 1280 et seq.) required the enforcement of the arbitration agreement. Sanchez argued in opposition that the class arbitration waiver was unenforceable under *Gentry v. Superior Court* (2007) 42 Cal.4th 443 [64 Cal.Rptr.3d 773, 165 P.3d 556] (*Gentry*) and that the arbitration agreement as a whole was unconscionable because (1) the small claims procedure allows disputes to be decided without "strict application of law" and using "relaxed rules of evidence"; (2) the arbitration agreement does not require a written arbitration award; (3) the arbitration panel designated in the arbitration agreement has only one arbitrator, Alan Saler, whose Web site includes a testimonial from an attorney at the former firm of Western Pizza's counsel; and (4) the arbitration agreement includes no provision for discovery.

Western Pizza argued in reply that only an arbitrator could determine the enforceability of the class arbitration waiver or the unconscionability of the arbitration agreement as a whole, that the class arbitration waiver was not unenforceable under *Gentry, supra,* 42 Cal.4th 443, and that the arbitration agreement was not unconscionable.

The trial court at the hearing on the motion cited *Gentry, supra,* 42 Cal.4th 443, and *Murphy v. Check 'N Go of California, Inc.* (2007) 156 Cal.App.4th

138 [67 Cal.Rptr.3d 120] (*Murphy*), and stated, "we have an individual plaintiff with a small claim who would otherwise be unable to afford legal services[,] and the class action would be an appropriate mechanism by which he could, in effect, bundle his claim with other claims and make it more efficient and expedient." The court also stated that the "small claims procedure" did not allow discovery in cases where the amount in dispute was up to $50,000, and that the agreement waived other rights and was procedurally and substantively unconscionable. The court entered a minute order denying the motion. Western Pizza timely appealed the order.[2]

## CONTENTIONS

Western Pizza contends (1) the enforceability of the arbitration agreement is a question for the arbitrator to decide; (2) the FAA preempts California law to the extent that California law would prevent the enforcement of the agreement; (3) the class arbitration waiver does not impermissibly interfere with the employees' ability to vindicate their statutory rights, and therefore is enforceable; and (4) the arbitration agreement is neither procedurally nor substantively unconscionable.

## DISCUSSION

### 1. *Applicability of the FAA*

■ The FAA compels judicial enforcement of a wide range of arbitration agreements in transactions affecting interstate commerce. (*Allied-Bruce Terminix Cos. v. Dobson* (1995) 513 U.S. 265, 273–275, 281 [130 L.Ed.2d 753, 115 S.Ct. 834].) Congress in enacting the FAA intended to exercise the full extent of its authority to regulate interstate commerce. (*Allied-Bruce, supra*, at p. 277.) The parties do not discuss whether Sanchez's employment involves interstate commerce and do not meaningfully discuss whether the FAA applies to the arbitration agreement. Both parties appear to assume that the FAA applies. The arbitration agreement states that the FAA governs "the interpretation, scope and enforcement of this ADR Agreement and all procedural issues." We need not decide whether the FAA applies by its own terms or the effect of the provision just quoted because our conclusions stated in this opinion are the same regardless of whether the FAA applies, as we will explain. Because the FAA does not conflict with California law as applied in this case, there is no preemption. (*Volt Info. Sciences v. Leland Stanford Jr. U.* (1989) 489 U.S. 468, 477 [103 L.Ed.2d 488, 109 S.Ct. 1248].)

---

[2] An order denying a motion to compel arbitration is appealable. (Code Civ. Proc., § 1294.)

## 2. The Enforceability of the Arbitration Agreement Is a Question for the Court to Decide

Section 2 of the FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.) Thus, under the FAA, the validity and enforceability of an arbitration agreement is governed by state law applicable to contracts generally. (*Doctor's Associates, Inc. v. Casarotto* (1996) 517 U.S. 681, 686–687 [134 L.Ed.2d 902, 116 S.Ct. 1652].)

The FAA was intended to overcome a historical judicial hostility to arbitration agreements. (*Mitsubishi Motors v. Soler Chrysler-Plymouth* (1985) 473 U.S. 614, 626, fn. 14 [87 L.Ed.2d 444, 105 S.Ct. 3346].) The FAA preempts state laws, whether legislative or judicial, that are directed at and disfavor arbitration agreements in particular, but does not preempt state laws applicable to contracts generally. (*Perry v. Thomas* (1987) 482 U.S. 483, 492–493, fn. 9 [96 L.Ed.2d 426, 107 S.Ct. 2520].) Rather, a state court may refuse to enforce an arbitration agreement, in whole or in part, to which the FAA applies, based on generally applicable contract defenses, such as fraud, duress, or unconscionability. (*Doctor's Associates, Inc. v. Casarotto, supra,* 517 U.S. at p. 687; *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, 165, 167 [30 Cal.Rptr.3d 76, 113 P.3d 1100] (*Discover Bank*).)

The California Arbitration Act (Code Civ. Proc., § 1280 et seq.) also compels the enforcement of valid arbitration agreements. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 97 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*).) Code of Civil Procedure section 1281 states: "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." Under California law, as under the FAA, an arbitration agreement may be invalidated upon the same grounds as any other contract. (*Armendariz, supra,* at p. 98.) In other words, although arbitration agreements ordinarily are enforced according to their terms, their enforceability is limited by the same general contract law principles governing the enforceability of any contract. (*Discover Bank, supra,* 36 Cal.4th at p. 163.)

Under California law, the question whether an arbitration agreement is unenforceable, in whole or in part, based on general contract law principles is a question for the court to decide, rather than an arbitrator. (*Discover Bank, supra,* 36 Cal.4th at p. 171; *Balandran v. Labor Ready, Inc.* (2004) 124

Cal.App.4th 1522, 1530 [22 Cal.Rptr.3d 441]; see *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1365 [82 Cal.Rptr.3d 229, 190 P.3d 586].) This includes the determination whether an arbitration agreement is unconscionable or contrary to public policy. (*Discover Bank, supra,* at p. 171.) *Discover Bank* concluded that the FAA, and particularly the opinion by the United States Supreme Court in *Green Tree Financial Corp. v. Bazzle* (2003) 539 U.S. 444 [156 L.Ed.2d 414, 123 S.Ct. 2402], did not conflict with California law on this point and that the California rule therefore governs.

Some opinions by the Courts of Appeal have suggested, without holding, that the enforceability of an arbitration agreement is a question for the arbitrator to decide if the arbitration agreement " 'clearly and unmistakably' " so provides.[3] (*Bruni v. Didion* (2008) 160 Cal.App.4th 1272, 1286–1288, 1290–1291 [73 Cal.Rptr.3d 395]; *Baker v. Osborne Development Corp.* (2008) 159 Cal.App.4th 884, 893–894 [71 Cal.Rptr.3d 854]; *Murphy, supra,* 156 Cal.App.4th 138 at pp. 144–145; see also *Ontiveros v. DHL Express (USA), Inc.* (2008) 164 Cal.App.4th 494, 503 & fn. 2 [79 Cal.Rptr.3d 471] (*Ontiveros*).) We need not decide whether such a clear and unmistakable provision would be enforceable because the arbitration agreement here does not clearly state that the arbitrator will decide whether the arbitration agreement is enforceable. Rather, the provision that the arbitrator will resolve "any disputes over the interpretation or application of this Arbitration Agreement" does not appear to encompass disputes concerning the enforceability of the arbitration agreement based on unconscionability, public policy, or other grounds.

Accordingly, we conclude, consistent with the rule stated in *Discover Bank, supra,* 36 Cal.4th at page 171, that the question whether the arbitration agreement is enforceable based on general contract law principles, including the question whether it is unconscionable or contrary to public policy, is a question for the court to decide rather than an arbitrator, regardless of whether the FAA applies.

---

[3] The United States Supreme Court has stated that the question whether the parties agreed to submit a particular issue to arbitration (i.e., the "question of arbitrability") is for the court to decide unless the parties "clearly and unmistakably" agreed otherwise. (*AT&T Technologies v. Communications Workers* (1986) 475 U.S. 643, 649 [89 L.Ed.2d 648, 106 S.Ct. 1415]; accord, *Howsam v. Dean Witter Reynolds, Inc.* (2002) 537 U.S. 79, 83–84 [154 L.Ed.2d 491, 123 S.Ct. 588]; *First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 944 [131 L.Ed.2d 985, 115 S.Ct. 1920].) The California opinions cited above suggest that the same rule may apply to the question of the enforceability of an arbitration agreement.

### 3. *The Class Arbitration Waiver Is Contrary to Public Policy and Unenforceable*

#### a. *Gentry v. Superior Court*

The California Supreme Court in *Gentry, supra*, 42 Cal.4th 443, decided two principal issues. First, *Gentry* held that a class arbitration waiver in an employment arbitration agreement was contrary to public policy and therefore unenforceable if the waiver impermissibly interfered with the employees' ability to vindicate unwaivable statutory rights. (*Id.* at pp. 456–457, 466.) This holding was based on the general principle that courts will not enforce a contract that is contrary to public policy, rather than the principle of unconscionability. (See *id.* at p. 467.) Second, *Gentry* held that the arbitration agreement as a whole was procedurally unconscionable despite a provision allowing employees to opt out of the arbitration agreement within 30 days. (*Id.* at pp. 470–472.)

*Gentry* framed the first issue as, "whether a class arbitration waiver would lead to a de facto waiver of statutory rights, or whether the ability to maintain a class action or arbitration is 'necessary to enable an employee to vindicate . . . unwaivable rights in an arbitration forum.' [Citation.]" (*Gentry, supra*, 42 Cal.4th at p. 457.) *Gentry* concluded that a class arbitration waiver is contrary to public policy and therefore unenforceable if the waiver would impermissibly interfere with the employees' ability to vindicate unwaivable statutory rights. (*Ibid.*)

*Gentry* stated that the rights to minimum wage and overtime compensation under Labor Code section 1194 are unwaivable. (*Gentry, supra*, 42 Cal.4th at pp. 455–456.) *Gentry* stated: "class actions play an important function in enforcing overtime laws by permitting employees who are subject to the same unlawful payment practices a relatively inexpensive way to resolve their disputes. . . . [T]he requirement that numerous employees suffering from the same illegal practice each separately prove the employer's wrongdoing is an inefficiency that may substantially drive up the costs of arbitration and diminish the prospect that the overtime laws will be enforced." (*Id.* at p. 459.) *Gentry* also stated that an employee who sues his or her employer individually is at greater risk of retaliation, that the risk of retaliation "is likely greater for employees further down on the corporate hierarchy," and that statistics showed that "retaliation against employees for asserting statutory rights under the Labor Code is widespread." (*Id.* at pp. 459–461.) *Gentry* stated further that some workers may be unaware of their legal rights, particularly immigrants with limited English language skills, and that class actions may be necessary to ensure the effective

enforcement of labor laws despite the fact that some claims may be large enough to provide an incentive for individual action. (*Id.* at pp. 461–462.)

■ *Gentry* stated that a trial court determining whether a class arbitration waiver impermissibly interferes with unwaivable statutory rights must consider: "[(1)] the modest size of the potential individual recovery, [(2)] the potential for retaliation against members of the class, [(3)] the fact that absent members of the class may be ill informed about their rights, and [(4)] other real world obstacles to the vindication of class members' right to overtime pay through individual arbitration." (*Gentry, supra,* 42 Cal.4th at p. 463.) *Gentry* continued: "If it concludes, based on these factors, that a class arbitration is likely to be a significantly more effective practical means of vindicating the rights of the affected employees than individual litigation or arbitration, and finds that the disallowance of the class action will likely lead to a less comprehensive enforcement of overtime laws for the employees alleged to be affected by the employer's violations, it must invalidate the class arbitration waiver to ensure that these employees can 'vindicate [their] unwaivable rights in an arbitration forum.' [Citation.]"[4] (42 Cal.4th at p. 463.)

*Gentry* stated further: "The kind of inquiry a trial court must make is similar to the one it already makes to determine whether class actions are appropriate. '[T]rial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action . . . .' (*Linder v. Thrifty Oil Co.* [(2000)] 23 Cal.4th [429,] 435 [97 Cal.Rptr.2d 179, 2 P.3d 27].) Class arbitration must still also meet the 'community of interest' requirement for all class actions, consisting of three factors: '(1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.' (*Sav-On Drug Stores[, Inc. v. Superior Court* (2004)] 34 Cal.4th [319,] 326 [17 Cal.Rptr.3d 906, 96 P.3d 194].)" (*Gentry, supra,* 42 Cal.4th at pp. 463–464.)

*Gentry* expressly declined to hold that all class arbitration waivers in cases involving overtime laws are unenforceable. (*Gentry, supra,* 42 Cal.4th at p. 462.) Instead, *Gentry* emphasized the particularized inquiry that trial courts must undertake based on the facts in each case. (*Id.* at p. 463.) *Gentry* reversed the judgment by the Court of Appeal upholding the class arbitration waiver and remanded the case with directions to remand the case to the trial court to determine "whether, in this particular case, class arbitration would be

---

[4] A trial court must invalidate a class arbitration waiver in those circumstances regardless of whether the arbitration agreement is procedurally unconscionable. (*Gentry, supra,* 42 Cal.4th at pp. 451, 467.)

a significantly more effective means than individual arbitration actions of vindicating the right to overtime pay . . . ."[5] (42 Cal.4th at p. 466.)

*Gentry* stated that like the generally applicable contract defense of unconscionability, the rule invalidating class arbitration waivers that impermissibly interfere with unwaivable statutory rights is "an arbitration-neutral rule" because "it applies to class waivers in arbitration and nonarbitration provisions alike. [Citations.]" (*Gentry, supra,* 42 Cal.4th at p. 465.) The rule therefore is not preempted by the FAA. (42 Cal.4th at p. 465.)

### b. *Standard of Review*

A trial court's determination whether a class arbitration waiver is enforceable based on whether class arbitration would be significantly more effective than individual arbitrations as a means to vindicate unwaivable rights, under the rule established in *Gentry, supra,* 42 Cal.4th 443, depends largely on consideration of " 'the efficiencies and practicalities of permitting group action' " (*id.* at pp. 463–464) in the particular case. In light of the similarity of this inquiry to the inquiry a trial court makes in determining whether a class action is appropriate (*ibid.*), we conclude that the standard of review of the court's ruling is the same. (Cf. *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 859 [107 Cal.Rptr.2d 841, 24 P.3d 493] ["any determination underlying any order is scrutinized under the test appropriate to such determination"].)

A ruling on class certification is reviewed for abuse of discretion. (*Sav-On Drug Stores, Inc. v. Superior Court, supra,* 34 Cal.4th at p. 326.) "Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification. . . . [I]n the absence of other error, a trial court ruling supported by substantial evidence generally will not be disturbed 'unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made [citation].' [Citation.] Under this standard, an order based upon improper criteria or incorrect assumptions calls for reversal ' "even though there may be substantial evidence to support the court's order." ' [Citations.] Accordingly, we must examine the trial court's reasons for denying class certification. 'Any valid pertinent reason stated will be sufficient to uphold

---

[5] A court may authorize a class arbitration if the arbitration agreement is silent on the issue. (*Discover Bank, supra,* 36 Cal.4th at p. 158; *Keating v. Superior Court* (1982) 31 Cal.3d 584, 609–614 [183 Cal.Rptr. 360, 645 P.2d 1192], overruled on other grounds in *Southland Corp. v. Keating* (1984) 465 U.S. 1 [79 L.Ed.2d 1, 104 S.Ct. 852].) The effect of invalidating and striking a class arbitration waiver therefore is to make class arbitration available.

the order.' [Citation.]" (*Linder v. Thrifty Oil Co.*, *supra*, 23 Cal.4th at pp. 435–436.) Similarly here, we will examine the trial court's reasons for determining that the class arbitration waiver is unenforceable under the rule from *Gentry*, *supra*, 42 Cal.4th 443, and review that determination for abuse of discretion.

### c. *The Class Arbitration Waiver Is Unenforceable Under the Rule from* Gentry

Sanchez argued in opposition to the motion to compel arbitration that the class arbitration waiver was unenforceable under the four-factor test in *Gentry*, *supra*, 42 Cal.4th 443, and that the arbitration agreement as a whole was unconscionable. The trial court stated at the beginning of the hearing, "I note that plaintiff is on the same page as the court," and cited *Gentry* and *Murphy*, *supra*, 156 Cal.App.4th 138.[6] The court stated with respect to the analysis under *Gentry*, "we have an individual plaintiff with a small claim who would otherwise be unable to afford legal services[,] and the class action would be an appropriate mechanism by which he could, in effect, bundle his claim with other claims and make it more efficient and expedient." Thus, the court determined that group action was likely to be significantly more effective than individual arbitrations as a means to vindicate the employees' statutory rights.

■ An employee's statutory right to reimbursement of job expenses is unwaivable (Lab. Code, §§ 2802, 2804; *Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, 951–952 [81 Cal.Rptr.3d 282, 189 P.3d 285]), as is the statutory right to receive minimum wage (Lab. Code, § 1194; *Gentry*, *supra*, 42 Cal.4th at pp. 455–456). Because this action involves the enforcement of unwaivable statutory rights, the rule from *Gentry* applies. (*Gentry*, *supra*, at p. 457.)

Our consideration of the factors from *Gentry*, *supra*, 42 Cal.4th 443, supports the trial court's decision. First, any individual recovery of the

---

[6] The employment arbitration agreement in *Murphy*, *supra*, 156 Cal.App.4th 138, included a class arbitration waiver and a provision stating that the arbitrator must decide any question concerning the unconscionability of the arbitration agreement. The trial court concluded that the class arbitration waiver was unconscionable under *Discover Bank*, *supra*, 36 Cal.4th 148, that the provision for the arbitrator to decide any question of unconscionability also was unconscionable, and that those provisions could not be severed from the arbitration agreement. (*Murphy*, *supra*, at pp. 142–143.) The Court of Appeal agreed. (*Id.* at pp. 144–149.) Thus, *Murphy* did not hold that the class arbitration waiver was unenforceable because it undermined unwaivable statutory rights, as in *Gentry*, *supra*, 42 Cal.4th 443, but that the waiver was unconscionable, as in *Discover Bank*.

difference between the amounts paid for reimbursement of delivery expenses and the amounts actually incurred is likely to be modest. The same is true of any individual recovery for the alleged failure to pay minimum wage as a result. (See *id.* at pp. 457–458.) Second, the delivery drivers are low-wage earners, and the potential for retaliation against members of the class who litigate or arbitrate individually is significant. (See *id.* at pp. 459–461.) Third, Sanchez presented evidence that most of the drivers are immigrants with limited English language skills who are likely to be unaware of their legal rights.[7] (See *id.* at p. 461.)

We conclude that the evidence supports the reason stated for the trial court's decision that the class arbitration waiver is unenforceable under the rule in *Gentry, supra,* 42 Cal.4th 443. Western Pizza has not shown that the court applied improper legal criteria or made an erroneous legal assumption, and therefore has failed to show an abuse of discretion.

### 4. *The Arbitration Agreement Is Unconscionable*

#### a. *Procedural and Substantive Unconscionability*

Procedural and substantive unconscionability must both be present to justify the refusal to enforce a contract or clause based on unconscionability. (*Armendariz, supra,* 24 Cal.4th at p. 114.) Procedural unconscionability focuses on oppression or unfair surprise, while substantive unconscionability focuses on overly harsh or one-sided terms. (*A & M Produce Co. v. FMC Corp.* (1982) 135 Cal.App.3d 473, 486 [186 Cal.Rptr. 114]; 23A West's Ann. U. Com. Code (2002 ed.) foll. § 2302, p. 246, com. 1.[8]) The more procedural unconscionability is present, the less substantive unconscionability is required to justify a determination that a contract or clause is unenforceable. Conversely, the less procedural unconscionability is present, the more substantive unconscionability is required to justify such a determination. (*Armendariz, supra,* 24 Cal.4th at p. 114.)

"[A] finding of procedural unconscionability does not mean that a contract will not be enforced, but rather that courts will scrutinize the substantive terms of the contract to ensure they are not manifestly unfair or one-sided. [Citation.] . . . [T]here are degrees of procedural unconscionability. At one end of the spectrum are contracts that have been freely negotiated by

---

[7] In light of our consideration of the first three factors, we need not consider the fourth factor.

[8] Civil Code section 1670.5 codified the common law doctrine of unconscionability. (*Armendariz, supra,* 24 Cal.4th at p. 114.) "Section 1670.5 is based upon Uniform Commercial Code section 2-302, but expands coverage to include noncommercial contracts." (*Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913, 925, fn. 10 [216 Cal.Rptr. 345, 702 P.2d 503].)

roughly equal parties, in which there is no procedural unconscionability. Although certain terms in these contracts may be construed strictly, courts will not find these contracts substantively unconscionable, no matter how one-sided the terms appear to be. [Citation.] Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum. [Citation.] Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced [citation], contain a degree of procedural unconscionability even without any notable surprises, and 'bear within them the clear danger of oppression and overreaching.' [Citation.]

"Thus, a conclusion that a contract contains no element of procedural unconscionability is tantamount to saying that, no matter how one-sided the contract terms, a court will not disturb the contract because of its confidence that the contract was negotiated or chosen freely, that the party subject to a seemingly one-sided term is presumed to have obtained some advantage from conceding the term or that, if one party negotiated poorly, it is not the court's place to rectify these kinds of errors or asymmetries." (*Gentry, supra,* 42 Cal.4th at pp. 469–470.)

Unconscionability under California law is a generally applicable contract defense and therefore applies to arbitration agreements regardless of whether the FAA applies. (*Armendariz, supra,* 24 Cal.4th at p. 114.) *Discover Bank, supra,* 36 Cal.4th 148, held that a class arbitration waiver in a consumer credit cardholder agreement was unconscionable under California law.[9] (*Discover Bank,* at pp. 162–163.) *Discover Bank* held further that the FAA did not preempt California law on this point, and stated that state courts are not obliged to enforce contractual terms that "are found to be unconscionable or contrary to public policy under general contract law principles." (*Discover Bank,* at p. 166.)

---

[9] *Discover Bank* concluded that the class arbitration waiver, provided as a " 'bill stuffer' " amending the cardholder agreement, was procedurally unconscionable because the cardholder was deemed to accept the amendment if he or she did not close the account. (*Discover Bank, supra,* 36 Cal.4th at p. 160.) *Discover Bank* held that the waiver was substantively unconscionable as an exculpatory clause for two reasons. First, in a consumer contract, in a setting where disputes typically involve small amounts, the effect of the waiver was to insulate the credit card company from class actions, which often provide " ' "the only effective way to halt and redress" ' " alleged wrongful conduct. (*Id.* at p. 161.) Second, the waiver was unfairly one-sided " 'because credit card companies typically do not sue their customers in class action lawsuits.' [Citation.]" (*Ibid.*)

*Gentry* analyzed the enforceability of a class arbitration waiver by considering its effect on unwaivable statutory rights rather than unconscionability because in *Gentry,* unlike *Discover Bank, supra,* 36 Cal.4th 148, the plaintiff sought to vindicate unwaivable rights. (*Gentry, supra,* 42 Cal.4th at p. 455, 457.) *Gentry* held that a class arbitration waiver that impermissibly interferes with the employees' ability to vindicate unwaivable statutory rights is unenforceable regardless of whether the arbitration agreement is procedurally unconscionable, as we have noted. (*Gentry, supra,* 42 Cal.4th at pp. 451, 467.)

We independently review the trial court's determination that a contractual provision is unconscionable if the material facts are undisputed, as here. (*Gatton v. T-Mobile USA, Inc.* (2007) 152 Cal.App.4th 571, 579 [61 Cal.Rptr.3d 344].)

### b. *The Arbitration Agreement Is Procedurally Unconscionable*

Procedural unconscionability focuses on oppression or unfair surprise, as we have stated. Oppression results from unequal bargaining power when a contracting party has no meaningful choice but to accept the contract terms. (*A & M Produce Co. v. FMC Corp.*, supra, 135 Cal.App.3d at p. 486; see Spanogle, *Analyzing Unconscionability Problems* (1969) 117 U. Pa. L.Rev. 931, 944 (Spanogle).) Unfair surprise results from misleading bargaining conduct or other circumstances indicating that a party's consent was not an informed choice. (*A & M Produce, supra,* at p. 486; see Spanogle, *supra,* at p. 943.[10])

*Gentry* held that an employment arbitration agreement was procedurally unconscionable despite the presence of a 30-day opt-out provision because there were indications that the plaintiff's failure to exercise that option was not a free and informed decision. (*Gentry, supra,* 42 Cal.4th at pp. 470–472.) *Gentry* stated that the plaintiff's decision was not an informed decision because an explanation of the benefits of arbitration in an employee handbook failed to mention significant disadvantages of the particular arbitration agreement compared with litigation, and therefore was "markedly one-sided" and presented "a highly distorted picture." (*Gentry, supra,* 42 Cal.4th at pp. 470, 471.) The handbook stated that arbitration was " 'much less expensive' " than litigation and that " 'the arbitrator can award monetary damages to compensate you for the harm you may have suffered . . . .' " (*Id.* at p. 471.) It failed to disclose, however, that the arbitration agreement imposed (1) shorter limitations periods; (2) a limitation on the duration of backpay awardable as damages; (3) a limitation on the amount of punitive damages; and (4) a provision stating that attorney fees " 'generally' " would be borne by each party unless the arbitrator exercised his or her discretion to award fees to the employee, compared with a prevailing plaintiff's entitlement to a fee award under Labor Code section 1194, subdivision (a). (*Gentry, supra,* at pp. 470–471.) Although the lengthy arbitration agreement disclosed all of those terms, *Gentry* concluded that "only a legally sophisticated party would

---

[10] " 'Unfair surprise' is a relatively easy concept to visualize. Hiding a clause in a mass of fine print trivia is one method of surprising the non-drafting party with unknown terms. Another method is to phrase the clause in language that is incomprehensible to a layman or that diverts his attention from problems raised or rights lost. A variety of deceptive sales practices and other tactics might be catalogued, but the foregoing should suffice to indicate the type of problem covered by 'unfair surprise.' " (Spanogle, *supra,* 117 U. Pa. L.Rev. at p. 943.)

have understood that these rules and procedures are considerably less favorable to an employee than those operating in a judicial forum." (*Id.* at p. 471.)

*Gentry* stated that the plaintiff's decision likely was not made freely because the materials provided to the plaintiff clearly expressed the employer's preference for arbitration. (*Gentry, supra,* 42 Cal.4th at pp. 471–472.) *Gentry* stated: "Given the inequality between employer and employee and the economic power that the former wields over the latter (see *Armendariz, supra,* 24 Cal.4th at p. 115), it is likely that Circuit City employees felt at least some pressure not to opt out of the arbitration agreement. The lack of material information about the disadvantageous terms of the arbitration agreement, combined with the likelihood that employees felt at least some pressure not to opt out of the arbitration agreement, leads to the conclusion that the present agreement was, at the very least, not entirely free from procedural unconscionability." (*Id.* at p. 472, fn. omitted.)

The record here does not indicate a distorted presentation of the benefits of arbitration to the degree that was present in *Gentry, supra,* 42 Cal.4th 443. The arbitration agreement states that the purpose of the agreement is "to resolve any disputes that may arise between the Parties in a timely, fair and individualized manner," but otherwise does not extol the benefits of arbitration. The arbitration agreement does not limit the limitations periods, the remedies available, or the amount of punitive damages. It states, "Except as otherwise required by law, each party shall bear its own attorney fees and costs," and therefore incorporates any statutory right to recover fees rather than creating a presumption against a fee recovery. Thus, the arbitration agreement neither contains the same types of disadvantages for employees as were present in *Gentry* nor fails to mention such disadvantageous terms. Moreover, the arbitration agreement expressly states that the agreement "is not a mandatory condition of employment."

We conclude, however, that the record indicates a degree of procedural unconscionability in two respects. First, as in *Gentry, supra,* 42 Cal.4th at page 472, the inequality in bargaining power between the low-wage employees and their employer makes it likely that the employees felt at least some pressure to sign the arbitration agreement. Second, the arbitration agreement suggests that there are multiple arbitrators to choose from ("the then-current Employment Arbitration panel of the Dispute Eradication Services") and fails to mention that the designated arbitration provider includes only one arbitrator. This renders the arbitrator selection process illusory and creates a significant risk that Western Pizza as a "repeat player" before the same arbitrator

will reap a significant advantage.[11] (See *Armendariz, supra,* 24 Cal.4th at p. 115; *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 178 [116 Cal.Rptr.2d 671].) These circumstances indicate that the employees' decision to enter into the arbitration agreement likely was not a free and informed decision but was marked by some degree of oppression and unfair surprise, i.e., procedural unconscionability. We therefore must scrutinize the terms of the arbitration agreement to determine whether it is so unfairly one sided as to be substantively unconscionable.

 c. *The Arbitrator Selection Provision Is Substantively Unconscionable*

■ "Substantively unconscionable terms may take various forms, but may generally be described as unfairly one-sided." (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071 [130 Cal.Rptr.2d 892, 63 P.3d 979] (*Little*).) "Given the lack of choice and the potential disadvantages that even a fair arbitration system can harbor for employees, we must be particularly attuned to claims that employers with superior bargaining power have imposed one-sided, substantively unconscionable terms as part of an arbitration agreement. 'Private arbitration may resolve disputes faster and cheaper than judicial proceedings. Private arbitration, however, may also become an instrument of injustice imposed on a "take it or leave it" basis. The courts must distinguish the former from the latter, to ensure that private arbitration systems resolve disputes not only with speed and economy but also with fairness.' [Citation.]" (*Armendariz, supra,* 24 Cal.4th at p. 115.)

Sanchez contends the arbitration agreement is substantively unconscionable in several respects. He cites the class arbitration waiver, the small claims provision, the absence of any provision requiring a written arbitration award, the designation of an arbitration provider consisting of a single arbitrator, and the absence of any express provision for discovery. In light of our conclusion that the trial court properly decided that the class arbitration waiver is contrary to public policy and therefore unenforceable, we need not decide whether that provision is unconscionable. (See *Gentry, supra,* 42 Cal.4th at p. 467 ["the validity of a class arbitration waiver was analyzed in the previous part of this opinion in terms of unwaivable statutory rights rather than unconscionability"].)

■ *Armendariz, supra,* 24 Cal.4th 83, addressed some of the other bases for unconscionability asserted here. *Armendariz* held that an employee can be

---

[11] Although the agreement states that the arbitrator will have no authority to bind the parties "until he has been affirmatively approved by both parties," it seems likely that an employee in Sanchez's position would not feel free to reject the arbitration provider designated by his employer under the terms of the agreement even after a dispute had arisen. (See *Gentry, supra,* 42 Cal.4th at pp. 471–472.)

compelled to arbitrate unwaivable statutory claims only if certain minimum requirements are satisfied: (1) the arbitration agreement may not limit the statutory remedies available (*id.* at pp. 103–104); (2) the parties are entitled to discovery sufficient to vindicate the unwaivable statutory rights (*id.* at pp. 105–106); (3) the arbitrator must provide a written decision revealing "the essential findings and conclusions on which the award is based" (*id.* at p. 107); and (4) the employer must bear all costs that are unique to arbitration (*id.* at p. 113).[12] (See *Little, supra,* 29 Cal.4th at p. 1076.)[13] *Armendariz* held that to the extent that the arbitration agreement was silent on these issues, these requirements must be implied as a matter of law. (*Armendariz, supra,* 24 Cal.4th at pp. 106, 107, 113 [interpreted the agreement to provide for adequate discovery, a written arbitration award, and the employer's payment of arbitration costs].) To the extent that the agreement expressly limited these rights, *Armendariz* held that the agreement was contrary to public policy and unenforceable. (*Id.* at p. 104 [stated that a provision limiting damages was unlawful].)

*Armendariz* also held that the arbitration agreement was procedurally and substantively unconscionable. (*Armendariz, supra,* 24 Cal.4th at pp. 114–121.) With respect to substantive unconscionability, *Armendariz* considered the lack of mutuality of the agreement to arbitrate and a limitation on recoverable damages. The arbitration agreement lacked mutuality because it required employees to arbitrate their wrongful termination claims against the employer but did not require the employer to arbitrate any of its claims against employees. (*Id.* at pp. 115–116.) *Armendariz* concluded that this provision was unfairly one-sided (*id.* at pp. 118–120) and concluded that the limitation on damages compounded the unconscionability of the arbitration agreement (*id.* at p. 121). In its discussion of substantive unconscionability, *Armendariz* did not consider those issues on which the arbitration agreement was silent where terms were implied as a matter of law. (*Id.* at pp. 115–121; see also *id.* at p. 124 [described the unlawful provisions as only "an unlawful damages provision and an unconscionably unilateral arbitration clause"].) Because those terms were implied as a matter of law, the absence of those express provisions was not unconscionable and provided no basis to deny the enforcement of the arbitration agreement. (*Id.* at pp. 106, 113; see *Little, supra,* 29 Cal.4th at p. 1075 & fn. 1 [stating that the absence of an express provision requiring judicial review was not unconscionable for this reason].)

---

[12] *Armendariz* also stated that the arbitration agreement must provide for a neutral arbitrator, but noted that the requirement was not at issue in that case. (*Armendariz, supra,* 24 Cal.4th at p. 113.)

[13] *Little* held that the *Armendariz* requirements apply not only to unwaivable statutory rights, but also to unwaivable common law rights. (*Little, supra,* 29 Cal.4th at pp. 1077, 1079.)

Similarly here, we conclude that the absence of express provisions requiring a written arbitration award and allowing discovery does not render the arbitration agreement unconscionable. Rather, those terms are implied as a matter of law as part of the agreement. (*Armendariz, supra*, 24 Cal.4th at pp. 106, 107.)

 The small claims provision states that for claims that do not exceed $50,000, the arbitrator may apply "relaxed rules of evidence, the use of broad principles of equity in place of strict application of law, telephonic hearings, and such other economic procedures as the Arbitrator deems appropriate under the circumstances of the dispute and consistent with due process." An arbitrator ordinarily has broad discretion with respect to the procedures and law governing the arbitration. Rules of evidence and judicial procedure do not apply to arbitration proceedings unless the parties otherwise agree. (Code Civ. Proc., § 1282.2, subd. (d); *Sy First Family Ltd. Partnership v. Cheung* (1999) 70 Cal.App.4th 1334, 1342 [83 Cal.Rptr.2d 340].) Arbitration procedures violate the common law right to a fair hearing "only in the clearest of cases, i.e., when the applicable procedures essentially preclude the possibility of a fair hearing." (*Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 826, fn. 23 [171 Cal.Rptr. 604, 623 P.2d 165] (*Scissor-Tail*).) "Moreover, '[a]rbitrators, unless specifically required to act in conformity with rules of law, may base their decision upon broad principles of justice and equity, and in doing so may expressly or impliedly reject a claim that a party might successfully have asserted in a judicial action.' [Citations.]" (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 10–11 [10 Cal.Rptr.2d 183, 832 P.2d 899] (*Moncharsh*).)[14] We conclude that the matters authorized under the small claims provision are an ordinary incident of arbitration and that the small claims provision is not substantively unconscionable.

Finally, an arbitration agreement must provide for a neutral arbitrator. (*Scissor-Tail, supra*, 28 Cal.3d at p. 826; see *Armendariz, supra*, 24 Cal.4th at p. 103 [stating that a neutral arbitrator "is essential to ensuring the integrity of the arbitration process"].) In our view, the designation of a "panel" of arbitrators consisting of a single arbitrator selected by Western Pizza created a false appearance of mutuality in the selection of an arbitrator. Moreover, the effective designation of a single arbitrator in what appears to be a standard arbitration agreement applicable to a large number of corporate employees gives rise to a significant risk of financial interdependence between Western Pizza and the arbitrator, and an opportunity for Western Pizza to gain an

---

[14] *Moncharsh* explained that the merits of an arbitration award ordinarily are not subject to judicial review and that the parties are deemed to have accepted the risk of error in return for a speedy, inexpensive, and conclusive resolution of their dispute. (*Moncharsh, supra*, 3 Cal.4th at pp. 11–12.) *Moncharsh* stated further that statutes "providing for judicial review in circumstances involving serious problems with the award itself, or with the fairness of the arbitration process" reduce the risk of error. (*Id.* at p. 12 [citing Code Civ. Proc., §§ 1286.2 & 1286.6].)

advantage through its knowledge of and experience with the arbitrator. (See *Armendariz, supra*, 24 Cal.4th at p. 115; *Mercuro v. Superior Court, supra*, 96 Cal.App.4th at p. 178.) We conclude that this provision is unfairly one-sided and substantively unconscionable.

### 5. *The Entire Arbitration Agreement Is Unenforceable*

■ A trial court may either sever an unconscionable or otherwise unlawful provision from an arbitration agreement and enforce the remainder, restrict the application of the provision so as to avoid unconscionable results, or refuse to enforce the entire agreement. (*Armendariz, supra*, 24 Cal.4th at pp. 122–124, citing Civ. Code, §§ 1670.5, 1598 & 1599.) Although a court has some discretion in this regard, a court may refuse to enforce the entire agreement only if the central purpose of the agreement is tainted by illegality. (*Armendariz*, at pp. 122–124.) "If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." (*Armendariz, supra*, 24 Cal.4th at p. 124; accord, *Little, supra*, 29 Cal.4th at p. 1074.)

Whether a contract is severable in this regard is primarily a question of contract interpretation. " ' "Whether a contract is entire or separable depends upon its language and subject matter, and this question is one of construction to be determined by the court according to the intention of the parties." ' " (*Armendariz, supra*, 24 Cal.4th at p. 122, quoting *Keene v. Harling* (1964) 61 Cal.2d 318, 320 [38 Cal.Rptr. 513, 392 P.2d 273].) Questions of contract interpretation are subject to de novo review unless the interpretation turns on the credibility of extrinsic evidence. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].)

*Armendariz* stated that two reasons for severing or restricting illegal terms rather than voiding the entire contract are "first . . . to prevent parties from gaining undeserved benefit or suffering undeserved detriment as a result of voiding the entire agreement—particularly when there has been full or partial performance of the contract. [Citations.] Second, more generally, the doctrine of severance attempts to conserve a contractual relationship if to do so would not be condoning an illegal scheme. [Citations.]" (*Armendariz, supra*, 24 Cal.4th at pp. 123–124.) "The overarching inquiry is whether ' "the interests of justice . . . would be furthered" ' by severance. [Citation.]" (*Id.* at p. 124.)

The arbitration agreement in *Scissor-Tail* provided for arbitration before the union of the party imposing the agreement. (*Scissor-Tail, supra*, 28 Cal.3d at p. 813.) *Scissor-Tail* concluded that this provision was unconscionable because the arbitrator was likely to be biased in favor of that party. (*Id.* at

pp. 826–828.) Rather than invalidate the arbitration agreement in its entirety, *Scissor-Tail* concluded that the parties should be afforded an opportunity to agree on an arbitrator and, failing any agreement, the court on the petition of either party should appoint a neutral arbitrator pursuant to Code of Civil Procedure section 1281.6. (*Scissor-Tail, supra*, at p. 831.) *Armendariz* later explained that the statute, which provides for the court to appoint an arbitrator in the absence of an agreed method of selection by the parties, effectively authorized the reformation of the arbitration agreement in *Scissor-Tail* with respect to the selection of an arbitrator. (*Armendariz, supra*, 24 Cal.4th at p. 126.)

The arbitration agreement in *Armendariz* included both an unlawful damages limitation and an unconscionably unilateral provision requiring the arbitration of only the employee's claims against the employer. (*Armendariz, supra*, 24 Cal.4th at p. 124.) *Armendariz* stated: "[s]uch multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage. In other words, given the multiple unlawful provisions, the trial court did not abuse its discretion in concluding that the arbitration agreement is permeated by an unlawful purpose. [Citation.]"[15] (24 Cal.4th at p. 124.) *Armendariz* also stated that the unilateral arbitration clause was not capable of severance or restriction but could be removed from the agreement only through reformation and augmentation of the agreement, which is not permitted. (*Id.* at pp. 124–125.) This further indicated that the arbitration agreement was permeated by unconscionability. (*Ibid.*) *Armendariz* therefore invalidated the entire arbitration agreement. (*Ibid.*)

*Armendariz* stated in dicta that although the court need not decide whether the unlawful damages provision alone would justify the refusal to enforce the arbitration agreement: "An employer will not be deterred from routinely inserting such a deliberately illegal clause into the arbitration agreements it mandates for its employees if it knows that the worst penalty for such illegality is the severance of the clause after the employee has litigated the matter. In that sense, the enforcement of a form arbitration agreement containing such a clause drafted in bad faith would be condoning, or at least not discouraging, an illegal scheme, and severance would be disfavored unless it were for some other reason in the interests of justice. [Citation.] . . . Because we resolve this case on other grounds, we need not decide whether the state of the law with respect to damages limitations was sufficiently clear

---

[15] We understand this reference to the abuse of discretion standard to mean that because the arbitration agreement was not severable as a matter of contract interpretation (see *Armendariz, supra*, 24 Cal.4th at p. 122), the trial court's refusal to sever the unlawful terms and enforce the agreement was not an abuse of discretion.

at the time the arbitration agreement was signed to lead to the conclusion that this damages clause was drafted in bad faith." (*Armendariz, supra,* 24 Cal.4th at p. 125, fn. 13.)

The arbitration agreement in *Little* included only one unlawful provision allowing review by a second arbitrator of any award over $50,000. (*Little, supra,* 29 Cal.4th at pp. 1071–1074.) *Little* concluded that this provision could be severed without disturbing the rest of the arbitration agreement and that no reformation was needed. (*Id.* at p. 1075.) *Little* distinguished *Armendariz, supra,* 24 Cal.4th 83, on these grounds. (*Little, supra,* 29 Cal.4th at p. 1075.) *Little* stated further that there was "no indication that the state of the law was 'sufficiently clear at the time the arbitration agreement was signed to lead to the conclusion that this [appellate arbitration provision] was drafted in bad faith.' (*Armendariz, supra,* 24 Cal.4th at pp. 124–125, fn. 13.)" (*Id.* at pp. 1075–1076.) *Little* concluded that severance was appropriate and that the arbitration agreement was valid and enforceable with the unconscionable provision stricken. (*Id.* at p. 1076.)

In *Discover Bank,* the trial court determined that a class arbitration waiver in a consumer credit cardholder agreement was unconscionable and that the provision was severable, and struck it from the arbitration agreement. (*Discover Bank, supra,* 36 Cal.4th at p. 155.) The Court of Appeal held that any California rule prohibiting class arbitration waivers was prohibited by the FAA and issued an extraordinary writ directing the trial court to issue an order enforcing the arbitration agreement as written. (36 Cal.4th at p. 155.) The California Supreme Court held that the class arbitration waiver was unconscionable under general contract law principles and that the FAA did not preempt California law on this issue. (36 Cal.4th at pp. 162–163, 165–166.) *Discover Bank* therefore reversed the judgment by the Court of Appeal (*id.* at p. 174), and did not address the question of severability.

 *Gentry* held that a class arbitration waiver in an employment arbitration agreement was unenforceable if the trial court on remand determined that class arbitration would be a significantly more effective means than individual arbitrations to vindicate the employees' right to overtime pay. (*Gentry, supra,* 42 Cal.4th at p. 466.) *Gentry* also held that a 30-day opt-out provision was procedurally unconscionable (*id.* at pp. 470–472), and remanded the matter for a decision by the trial court as to whether the original arbitration agreement or an amended agreement was effective, whether the agreement contained substantively unconscionable terms, and whether severance was appropriate (*id.* at pp. 472–473). *Gentry* stated: "Generally speaking, when an arbitration agreement contains a single term in violation of public policy, that term will be severed and the rest of the arbitration agreement enforced. (*Little, supra,* 29 Cal.4th at pp. 1074–1075.) We believe

that severance is particularly appropriate in the case of class arbitration waivers because, unlike limitations on remedies or other limitations that are invalid on their face (see *Armendariz, supra*, 24 Cal.4th at pp. 103–104), such waivers will only be invalidated after the proper factual showing, as discussed above. The presence of a class arbitration waiver in an employee arbitration agreement therefore does not by itself 'indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage.' (*Id.* at p. 124.)" (*Gentry, supra*, 42 Cal.4th at p. 466.)

Some Court of Appeal opinions have held that arbitration agreements containing more than one unlawful provision of importance were permeated by an unlawful purpose and have refused to enforce the agreements. (E.g., *Ontiveros, supra*, 164 Cal.App.4th 494, 515; *Murphy, supra*, 156 Cal.App.4th at p. 149.) Other opinions holding that severance was not available relied at least in part on the inability to remove the unconscionable effect of the provisions without impermissibly reforming or augmenting the agreement, a factor that is not present here. (E.g., *Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267, 1287–1288 [16 Cal.Rptr.3d 296]; *Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, 726–727 [13 Cal.Rptr.3d 88]; *Martinez v. Master Protection Corp.* (2004) 118 Cal.App.4th 107, 119 [12 Cal.Rptr.3d 663]; *Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638, 666–667 [9 Cal.Rptr.3d 422]; *O'Hare v. Municipal Resource Consultants* (2003) 107 Cal.App.4th 267, 279 [132 Cal.Rptr.2d 116]; *Mercuro v. Superior Court, supra*, 96 Cal.App.4th at pp. 185–186; see also *Ontiveros, supra*, 164 Cal.App.4th at p. 515, fn. 16.)

The arbitration agreement here includes a class arbitration waiver that is contrary to public policy and an unconscionable arbitrator selection clause, as we have stated. These are important provisions that, if they were not challenged in litigation, could create substantial disadvantages for an employee seeking to arbitrate a modest claim. Although it may be true that neither of these provisions alone would justify the refusal to enforce the entire arbitration agreement (see *Gentry, supra*, 42 Cal.4th at p. 466; *Scissor-Tail, supra*, 28 Cal.3d at p. 828), we believe that these provisions considered together indicate an effort to impose on an employee a forum with distinct advantages for the employer. As in *Armendariz, supra*, 24 Cal.4th at page 124, we conclude that the arbitration agreement is permeated by an unlawful purpose. Accordingly, the denial of the motion to compel arbitration was proper.

## *DISPOSITION*

The order is affirmed. Sanchez is entitled to recover his costs on appeal.

Klein, P. J., and Aldrich, J., concurred.